Arthur C. ANDERSON, Appellant,

v.

PERSONNEL ADVISORY BOARD of the State of Missouri et al., Respondents.

No. 30224.

Missouri Court of Appeals,
Western District.

July 31, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 4, 1979.

Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, for appellant.

John D. Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for respondents.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment in action for judicial review of a decision of the Personnel Advisory Board of the State of Missouri sustaining the discharge of Arthur C. Anderson from a merit system position at the Missouri Training Center for Men at Moberly.

In this court, the parties join issue on whether or not appellant was dismissed by an "appointing authority," within the meaning of Section 36.380, RSMo 1978, which provides, in part: "An appointing authority may dismiss for cause any employee in his division occupying a position subject [to the State Merit System Law]." Section 36.020(1) defines "Appointing authority" as "* * * an officer or agency subject to this law having power to make appointments; * * *."

Arthur C. Anderson was employed at the Missouri Training Center for Men (MTCM) at Moberly as a Corrections Officer I, a position subject to the State Merit System Law. He was a tower guard at MTCM and was dismissed after two escapes occurred near his tower on February 15 and February 22, 1977.

On March 3, 1977, Carl White, Superintendent of MTCM addressed a letter to Anderson, receipt of which was acknowledged March 4, advising him that he had recommended to the Director, Division of Corrections, and the Personnel Officer for the Division, that Anderson be removed from his job for "failure to perform the duties of Corrections Officer I." The letter detailed the facts upon which the charge was based and notified Anderson that he had ten days in which to reply to the charges. Anderson appeared before the Division's Review Committee and presented testimony in his behalf. The committee recommended that Anderson be suspended.

On March 14, 1977, Edward E. Haynes, Acting Director of the Division of Corrections, addressed a letter to Anderson, informing him that he had considered White's report of the escapes and Anderson's testimony before the Review Committee and that he agreed with White's recommendation that Anderson's services as a Corrections Officer be terminated.

On March 21, 1977, Richard C. Sommer, Personnel Officer of the Division of Corrections, addressed a letter to Anderson, notifying him of his dismissal effective March 25, 1977. This notice was served on Anderson.

Anderson requested and received a hearing before the Personnel Advisory Board, as provided by Section 36.390(5).

At the outset of the hearing, counsel for Anderson stated that one of the questions raised was whether or not Anderson had been dismissed by the "appointing authority." Counsel stated Anderson's position that the appointing authority in the circumstances was the Director of the Department

of Social Services. In its conclusions of law, the Board, in sustaining the dismissal, stated that the Director of the Division of Corrections was the appointing authority and that the notice by the personnel officer acting for the Division Director satisfied the requirement that notice of dismissal be given by the appointing authority.

The circuit court on appeal by Anderson found the order of the Board to be "lawful, reasonable, proper, and * * * based on competent and substantial evidence upon the whole record" and affirmed the Board's order.

In this court, the first contention of appellant is that he was not discharged by the appointing authority and that the trial court erred in affirming the Board's order based upon the erroneous conclusion that Haynes as Acting Director of the Division of Corrections was the appointing authority.

The question thus posed arises by reason of the reorganization of the executive branch of the state government following the amendment to Section 12 of Article IV, Constitution of Missouri, 1945, and adopted August 8, 1972. Laws of Mo., 1971–1972, p. 1049. That amendment established "a department of social services." Section 13.15 of the Omnibus State Reorganization Act of 1974 transferred all the powers, duties and functions of the department of corrections to the department of social services. Appendix B, RSMo1978. The Missouri Training Center for Men had previously been established as an institution within the Department of Corrections. See § 216.367, RSMo1969.

Appellant's principal reliance is upon Section 19 of Article IV, Constitution of Missouri, 1945, as follows: "The head of each department may select and remove all appointees in the department except as otherwise provided in this constitution, or by law." The appellant contends that there is no other provision of law granting appointive power for the Division of Corrections and, therefore, under the constitutional provision, the appointing authority for employees of that division is the Director of the Department of Social Services.

Respondents rely upon the provisions of the Omnibus Reorganization Act, supra, to the effect that, upon a transfer type II, the mode of transfer of the Department of Corrections to the Department of Social Services, the department director is given "supervision" of "* * * the employment and discharge of employees, except as otherwise provided in this act; * * *." § 1.7(1)(b). A further significant provision of this subparagraph reads as follows: "The method of appointment under type II transfer will remain unchanged unless specifically altered by this act or later acts."

Respondents then point to Section 13.15 of the Omnibus Reorganization Act which provides, in part:

"All the powers, duties and functions of the department of corrections, chapter 216 RSMo and others, are transferred by type II transfer to the department of social services and the department of corrections is abolished. The director of the department of social services shall appoint a director of the division of corrections who shall appoint a deputy director of the division of corrections, both of whom shall be trained and experienced in penal administration. The director of the division shall have all the powers, duties and functions vested in the director of the department of corrections and the director of the division shall receive the compensation provided by law for the director of the department of corrections. . . ."

Respondents turn to Section 216.115, RSMo 1969, which provided:

"1. The director of the [division] of corrections shall have general supervision, management and control of the institutions within the division. It shall be his duty to investigate the management and conduct of the penal and correctional institutions, and to advise the governor and the general assembly as to any improvements that might be made therein for efficiency, economy and the general well-being of the inmates and the institutions.

"2. The director shall set forth the duties and responsibilities of all superin-

tendents, officers, assistants and other employees of the [division]; and may require reports from the wardens, superintendents or other officers as to their conduct and management of the institutions under their supervision.

"3. The director shall make such rules and regulations, not in conflict with the laws of this state, as he may deem proper for the government and management of the institutions under the jurisdiction of the [division]."

Respondents contend that this general grant of power to the division director is an exception provided by law allowing the division director to select and remove appointees, within the meaning of the constitutional provision.

Inexplicably, both appellant and respondents appear to have overlooked express statutory provisions dealing with personnel. At least, neither party has referred to such provisions.

Thus, Section 216.215, RSMo 1969, established a "Division of Administration" within the Department of Corrections. The division of administration was given "* * * general supervision over the custody, care and discipline of all inmates and the management and maintenance of all institutions under the jurisdiction of the [division]."

Section 216.220 provided:

"The chief administrative officer of the division of administration shall be the director of the department of corrections and he shall have administrative control of the institutions, personnel and activities of the division."

Section 216.230 provided:

"1. The warden or superintendent of each institution shall, with the approval of the director of the division of administration and in conformance with the provisions of this and other laws, appoint assistants and other employees necessary to the proper conduct of the institution of which he or she is warden or superintendent.

"2. The warden or superintendent of each institution shall appoint with the approval of the director of the division of administration and in conformance with the provisions of this and other laws, a qualified employee as classification director whose duty it shall be to serve as secretary to the classification committee and to perform such other duties in connection with the classification and assignment of prisoners as may be assigned to him by the warden, superintendent or classification committee of the institution."

(In accordance with the Omnibus Reorganization Act, the 1978 Revision of these statutes has substituted "director of the [division] of corrections" for "director of the department of corrections.")

■ Viewing these provisions in the light of the Omnibus Reorganization Act, the appointing authority for the MTCM is the superintendent of that institution, acting with the approval of the director of the division of corrections as director of the section of administration. § 216.230, supra.

■ Appellant's argument that all of the *duties* of the superintendent of MTCM were transferred by the reorganization act to the Director of the Department of Social Services is without merit. "Powers, duties and functions" of the department of corrections were transferred to the department of social services but the effect of such transfer was not to transfer all of the powers of the designated officers of the department of corrections to the director of the department of social services. Another layer of supervision was imposed upon superintendents, etc., but their authority was not terminated.

■ In view of the above provisions, it must be concluded that appellant received adequate notice of the termination of his services. The Superintendent of MTCM is the appointing officer for purposes of Section 36.380. His exercise of authority to terminate employees would be subject, as is the power of appointment, to approval of the Director of the Division of Corrections. White, the Superintendent, notified appellant that he would recommend to the Director that appellant's employment be ter-

minated. The Director notified appellant that he agreed with the Superintendent's recommendation. Appellant was not entitled to notice or other action on the part of the Director of the Department of Social Services. Although the Board's conclusion that the Division Director was the appointing authority is not sustainable, the requirements of the personnel law were substantially met and the Board's decision is not to be overturned on this ground.

Appellant has cited cases from other states which he argues support his position here. Inasmuch as the problem is one of statutory construction and application, what other states have held under their particular statutes is not helpful.

■ Appellant's contention that he was not given a written statement of the reason for his dismissal which complied with the requirement of Section 36.380, RSMo 1969, as applied in Wolf v. Missouri State Training School for Boys, 517 S.W.2d 138, 141–142[1, 2] (Mo. banc, 1974), is without merit. Sommer's letter, accompanied by a copy of Haynes' letter, was served on appellant March 22, 1977. It notified him that his employment was terminated effective at the close of work March 25, 1977. Thus he was given notice of termination before the effective date and Haynes' letter gave the reasons for the dismissal.

The Board summarized its conclusion as follows:

"Arthur C. Anderson did not satisfactorily perform the duties of a Corrections Officer I on February 15, 1977. He observed, or with due diligence was in a position to observe, two inmates scaling the zone fence on February 15, but did not take action until they had crossed the road, scaled the inner-perimeter fence, and dropped to the ground. This action would have taken a substantial period of time, enough for Anderson to shout a warning, fire at least one shot, and contact the Control Center by using either the telephone or intercom. It is also noted that Anderson had been warned about a possible escape attempt shortly before it occurred. Finally, Anderson had been instructed on how to clear a jammed weapon but did not attempt to do so by changing the magazine, even though two additional magazines were close at hand within the tower.

"Anderson's failure to attempt to clear the weapon on February 22 and to take effective action to prevent an escape is more serious because he contends he faced the same problem one week earlier. It is further noted that shortly after the February 22 escape, the Assistant Superintendent quickly fired three rounds from the weapon Anderson contends jammed, without any jams or malfunctions. Anderson made conflicting statements on February 23 and February 24 as to what he observed on February 22. Finally, the investigation of the February 22 escape indicated that the perimeter fences had been cut at ground level and that six inmates were missing. For these reasons, the Board finds that Anderson failed to satisfactorily perform the duties of a Corrections Officer I on February 15 and on February 22, 1977, and that his dismissal was proper under the Merit System Law."

■ Appellant argues that his dismissal was not for "cause" because the action attributed to him did not amount to "personal misconduct." He relies upon State ex rel. Eckles v. Kansas City, 257 S.W. 197 (Mo. App.1923) as holding that dismissal for cause calls for "personal misconduct." In that case the court did state (257 S.W. at 200): "Discharge for the 'good of the service' or 'for cause' imply [sic] some personal misconduct or fact, rendering the incumbent's further tenure harmful to the public interest." Here the board's finding supports the conclusion that appellant's further tenure "would be harmful to the public interest" by reason of his failure to perform properly the duties of his position. The board's order properly found that the dismissal was for cause.

Judgment affirmed.

All concur.