588 So.2d 428 (1991)
Susie W. VARNER
v.
Jack D. VARNER.
No. 90-CA-0287.
Supreme Court of Mississippi.
October 16, 1991.
*429 Stephen L. Beach III, Jackson, for appellant.
Charles L. Culpepper, Yazoo City, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
*430 ROBERTSON, Justice, for the Court:

I.
Superficially, this is a back child support case in which a father had been held in contempt for failure to pay. Upon study we find the case demanding sensitivity and insight as we seek equity and fairness without compromising established law for the support and care of children. Our problems are complicated by the mother's tardiness in claiming back child support, some nine years after (some of) the fact(s) and six-plus and four-plus years, respectively, after emancipation of two of the children.
In the end, we find the evidence supporting the Chancery Court's finding that the father in fact provided substantial support for his children, albeit not in the precise manner originally decreed. We affirm on the mother's appeal that the amount of back support due be increased. On cross-appeal, we reverse as the father may not have been given all of the credits to which he is legally entitled.

II.
Today's litigants are Jack David Varner and Susie W. (Sue) Varner, formerly husband and wife. The Varners are long-time residents of Yazoo City, Mississippi. Jack is a veterinarian; Sue a beautician and hair stylist.
Four children were born of the Varners' marriage, support for three of whom is at issue. First, there is Michelle, who was born March 29, 1962, and who is now Michelle Varner Harper. Michelle married at the age of twenty-one  on September 10, 1983, to be exact. Melinda, now Melinda Sue Varner Powell, was born October 7, 1963, and married on December 14, 1985, when she was twenty-two years old. Martha Nell (Boo) was born July 5, 1971, and at the time of the hearing below was enrolled as a student at Mississippi State University. The Varners' oldest child, Jack David Varner, Jr., is long since emancipated and lives in Minnesota.
On January 31, 1978,  more than thirteen years ago  the Chancery Court of Yazoo County, Mississippi, entered its final judgment, declaring the Varners divorced and their marriage ended. In relevant part, the Court:
ORDERED, ADJUDGED AND DECREED that... . Mrs. Susie W. Varner is awarded custody of the three minor children of the parties, names, Michelle, Melinda and Martha Nell and Jack D. Varner is awarded reasonable rights of visitation... . Jack D. Varner is to pay to Mrs. Susie W. Varner $600.00 per month for the support of the minor children beginning January 15, 1978 and each month thereafter until the minor children reach their majority, marry or become self supporting. [Emphasis supplied]
The present chapter began little over a year later.
Much of the testimony below centered on Melinda, the middle of the three daughters, who appears to have had a troubled adolescence, and the record likely but scratches the surface. For a while Melinda bounced back and forth between the Manchester Academy and the public schools in Yazoo City. She was finally asked to leave Manchester, and Jack and Sue decided to send her as a boarding student to French Camp Academy at French Camp, Mississippi, at the beginning of the fall term of 1979. Melinda's problems continued and came to a head one weekend in the Spring of 1980, when she came home to visit her mother. Sue found blue spots on Melinda's buttocks from her having been spanked with a paddle and registered an objection to the corporal punishment phase of French Camp's discipline program. French Camp advised the Varners that it could not continue Melinda as a student if her custodial parent would not support the school and particularly its discipline system. Ralph W. Newman, French Camp's Dean of Students, wrote to Sue:
We will allow her [Melinda] to remain here if you [Sue] will allow her father to have custody and care of her financially and educationally and that he will be the responsible party for us to work with, ... . But if you don't give over *431 Melinda to him, then you will have to remove her from the Academy.
Following this directive, Sue Varner addressed a letter to Jack dated March 19, 1980, which will ultimately become a centerpiece of this litigation:
This letter will serve as my authority to you to have custody of Melinda, to place her in the school which you decide is in her best interest and to be responsible for the expense thereof. So long as Melinda remains in your custody and in a school for which you pay the expense, the required child support payment which you pay to me monthly may be reduced by the sum of $200.00. You will, during such time, pay $200.00 per month each for Michelle and Martha Nell, or a total of $400.00.
The parties effected this new arrangement, albeit without advice to or consent from the Chancery Court, and Jack dropped his child support payments to Sue from $600.00 to $400.00 per month. Melinda's problems continued, however, and in August of 1980  two months short of her seventeenth birthday  she left French Camp for good. Soon thereafter, Melinda moved into a trailer at Tinsley, Mississippi, south of Yazoo City. She lived there with a man, conceived a child out of wedlock, and later married. The record reflects that Jack made substantial direct payments to Melinda for her support, including payments for expenses of her pregnancy and childbirth.
Michelle, the oldest girl, had a somewhat more conventional adolescence. She lived with her mother through the time of her graduation from Manchester Academy, but the two soon fell out and in June, 1980, Michelle came home from a date and found her clothes in the driveway. She called her father and asked if she could live with him and his new wife, Cathy. Michelle lived with Jack and Cathy for a brief time and then enrolled at Hinds Junior College in a nursing program. In June of 1980, coincident with Michelle's coming to live with him, Jack reduced his monthly payment to Sue from $400.00 to $200.00.
For the next nine years, Jack paid Sue $200.00 per month, ostensibly for Martha Nell, and all seemed tolerably well. Michelle turned twenty-one in 1983, and Melinda followed suit in late 1984. In May of 1989, Martha Nell, the youngest daughter, graduated from high school and soon enrolled in Mississippi State University. At that time, Jack ceased all child support payments to his former wife. In lieu thereof, Jack increased monthly deposits to Martha Nell's checking account he had earlier established.
At no time did Jack seek Chancery Court approval of any of these reductions in child support, nor does it appear that Sue made any objection. At one point she says she sought counsel, who advised her to let the arrearages build up to a sizable amount before going to court, but, insofar as the record reflects, Sue in no way communicated any unhappiness to her former husband until August 10, 1989  a month after Jack stopped making child support payments altogether. At that time she began the present proceedings by filing her complaint in the Chancery Court of Yazoo County, Mississippi, charging Jack with arrearages in child support going back to October 15, 1979  when Jack first reduced his child support payment from $600.00 to $400.00  and demanding that he now pay some ten years' back support, with interest, and that he be held in civil contempt.
At the hearing, Jack and Sue stipulated the sums he had paid to her and that, if his obligation legally remained $600.00 per month at all times, the arrearage through December 15, 1989, had accumulated to $49,200.00, with accrued interest of $18,735.02, or a total amount due of $67,935.02. The parties also stipulated that, at all times relevant hereto, Jack "has been and is now financially able to pay all arrearages due for child support, if any." Beyond this, the parties substantially, albeit sketchily, differed on who in fact provided what support for the children.
In the end, the Chancery Court held that Jack's arrearage was, in law, only $9,800.00 through January 15, 1990. Because most of this had accrued in the early years, the Court found interest due in the amount of $10,142.58, and entered judgment *432 in favor of Sue and against Jack for $19,942.58, and provided that interest would accrue on the principal after January 15, 1990, at eight percent. The Court held Jack in civil contempt for his refusal to pay child support and awarded Sue attorney's fees in the amount of $500.00.
En route, the Court found that the March 19, 1980, letter had effected a change of Melinda's custody and that, from and after that date, Jack of right reduced his child support payment by $200.00 per month. This left Jack with an arrearage for Melinda in the amount of $1,200.00 from October 15, 1979, through March 15, 1980. On the other hand, the Court held that Jack was without authority to reduce further his support payments when Michelle came to live with him and thereafter when she attended Hinds Junior College and found an arrearage from April 15, 1980, until March 15, 1983, the last payment date before Michelle turned twenty-one. Finally, the Court held that Jack had no authority to stop paying child support altogether just because Martha Nell (Boo) started to college at Mississippi State.
Sue Varner has perfected the present appeal, arguing that the Chancery Court erred substantially when it refused to award her full past-due child support of $49,200.00, plus interest. Jack cross-appeals, arguing that the Court below erred in finding that he was in arrears in his child support obligations at all.

III.
There is a matter of concern we should note at the outset. We are far downstream from the point where Jack made and Sue acquiesced in the complained-of change of course. Sue did not sue for some nine years and five months after Melinda and French Camp and the March 19 letter precipitated Jack's first renavigation. Three months later  in June of 1980  Michelle moved out and Jack began paying Sue only $200.00 a month. Such time lags are hardly unheard of, but they usually occur when, for practical reasons, the custodial spouse accepts that the supporting spouse simply cannot pay or that enforcing support is not worth the trouble. Here Jack has at all times been financially able, and Sue has known this. Our concerns escalate when we realize that, at the time she sued, Sue had been legally free of any obligation to support Michelle, for some six years, five months, and to support Melinda, for some four years and ten months. Only Martha Nell remained unemancipated.
To be sure, these support claims were, on August 10, 1989, legally viable. Claims for back child support may be brought at any time within seven years of the child's emancipation. Miss. Code Ann. § 15-1-43 (1972); Wilson v. Wilson, 464 So.2d 496 (Miss. 1985). But these claims were not brought by the then twenty-seven year old Michelle, and the then almost twenty-six year old Melinda, claiming they had been denied support during the later years of their minority. As we make clear below, any sums Sue recovers on behalf of Michelle or Melinda, she must pay directly to them, save only that she may reimburse herself for sums she may be able to prove she paid to or for her daughters during the months and years in issue over and above her own support obligations, supplying Jack's said-to-be-missing $200.00 per child per month. It is difficult not to view Sue's claim with a skeptic's eye.

IV.
Courts award child support to the custodial parent for the benefit and protection of the child. Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss. 1991); Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990); Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989); Alexander v. Alexander, 494 So.2d 365, 368 (Miss. 1986). Such benefits belong to the child, and the custodial parent has a fiduciary duty to hold them for the use of the child. Sorrell v. Borner, (Miss. No. 90-250, dec. Sept. 4, 1991) (not yet reported); Cumberland, 564 So.2d at 847; Alexander, 494 So.2d at 368; Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983). Such support obligations vest in the child as they accrue, and no court may thereafter modify or forgive them if they be not paid. Premeaux v. Smith, 569 *433 So.2d 681, 685 (Miss. 1990); Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss. 1990); Cumberland, 564 So.2d at 847; Brand v. Brand, 482 So.2d 236, 237 (Miss. 1986); Hailey v. Holden, 457 So.2d 947, 951 (Miss. 1984); Hambrick v. Prestwood, 382 So.2d 474, 476 (Miss. 1980). The only defense to an action therefor is payment.
No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity. The interest of children weighs in the judicial mind far heavier than those of either parent.
Cumberland, 564 So.2d at 847.
In Calton v. Calton, 485 So.2d 309, 310-11 (Miss. 1986), this Court refused to recognize a contract between divorced parents, containing a covenant not to sue for child support. We agreed with the Florida court in Lang v. Lang, 252 So.2d 809, 812 (Fla. Dist. Ct. App. 1971); that
[t]he basic right of the minor child to be supported by its parents is not affected by an agreement between the parties with respect to such obligations; "children are not chattels whose rights can be bargained away by parents" ... .
Calton, 485 So.2d at 310; see also, Lawrence v. Lawrence, 574 So.2d at 1381.
That the child has been emancipated does not pretermit recovery of vested but unpaid child support. Either the child or the former custodial parent may bring an action against the defaulting parent, see Premeaux v. Smith, 569 So.2d at 685, although the latter receives any recovery in his/her continuing fiduciary capacity subject to all of the duties and strictures thereof. Alexander v. Alexander, 494 So.2d 365, 368 (Miss. 1986); Wilson v. Wilson, 464 So.2d 496, 499 (Miss. 1985); Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983); see also, Taylor v. Taylor, 478 So.2d 310, 312 (Miss. 1985). If by reason of the supporting parent's default, the custodial parent is forced to dip into her own resources beyond what would otherwise be expected of her, she may recover and retain amounts so proved, Sides v. Pittman, 167 Miss. 751, 757, 150 So. 211, 212 (1933), subject to equitable adjustment should the child's prior needs so suggest.
Child support orders such as that we have here, an order for a single lump sum amount for the benefit of two or more children, are subject to these same rules but have unique features. For one thing, the emancipation of one child does not automatically reduce the supporting parent's periodic payment. Wilson v. Wilson, 464 So.2d 496, 497-98 (Miss. 1985); Schilling v. Schilling, 452 So.2d 834, 836 (Miss. 1984); Moore v. Moore, 372 So.2d 270, 271 (Miss. 1979); see also, Lieberman, Child Support In America 60-61 (1986).

Moore gives three reasons for this view: First, the allowance was $75.00 per week for the family group and did not provide for an allowance of $15.00 per week for each child. Perhaps the judgment contemplated that a base amount would be required regardless of the number of children with an undetermined amount for each child included in the $75.00 weekly allowance.
Second, a child support order is not based solely on the needs of the minor children, but takes into account the ability of a parent to pay child support. Consequently, a child support order may not accurately reflect the amount actually required for the support of children, but may reflect only the amount a parent can afford to pay. Allowing an automatic reduction of an undivided order would ignore the realities of such a situation. Third, considering an undivided child support order as equally divisible among the children overlooks the possibility that the requirements of the individual children may vary widely, depending upon the circumstances of each child.
Moore, 372 So.2d at 272. "In global" child support orders afford flexibility and avoid needless technicality in accounting. They recognize the reality that child support orders are inherently regressive. Rare is the child whose financial needs do not increase with age. Inflation accelerates the regression process. The majority of parents ordered to pay child support enjoy increases in income over the years, though there are *434 exceptions to which we should not be insensitive. The number of cases in which emancipation of one child requires, in justice and fairness, a less than proportionate reduction in a lump sum periodic child support payment are sufficiently large that we continue the rule accepted in Moore. These and other reasons suggest the appropriateness of saddling the parent obligated to pay child support with the burden of obtaining judicial relief or proving payment.
Still, the coin has another side. The number of children is, no doubt, the Court's principal consideration in setting the aggregate amount of the periodic payment. Common sense suggests the Court back in 1978 would not have set Jack's support obligation at $600.00 per month if there had been only one child to support, or even two. At the other end, emancipation of one ordinarily does reduce what is needed to support the minors who remain (at least from what was needed shortly before the emancipation). It does these principles no violence that we presume, albeit rebuttably, each of Jack's children enjoyed a pro rata share of each $600.00 payment.
The Court below held that the parties effected a legal change of Melinda's custody in March of 1980 and that this reduced Jack's aggregate support obligations by $200.00 per month. The Court did not rely on any presumption of proration, nor did it construe the 1978 judgment as having allocated $200.00 to each child. The Court instead accepted the March 19, 1980, letter as fixing the $200.00 reduction. In Arnold v. Conwill, 562 So.2d 97 (Miss. 1990), this Court overturned the chancery court's custody modification that had been based on an arrangement the custodial and non-custodial parents had made for one child to stay with the non-custodial parent while the custodial parent stabilized her living arrangements. Arnold, 562 So.2d at 100. The matter is moot, insofar as we may consider Melinda's custody, as she became emancipated on October 7, 1984. Our concern is the effect this extra-judicial change of custody may have had on Jack's child support obligations.
Without doubt or hesitation, we encourage post-divorce detente that parents may cooperate in rearing their children. It follows that, from time to time, adjustments can and should be made without burdening the courts. But see, Alexander v. Alexander, 494 So.2d at 368. The law remains firm that court-ordered child support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made. This gets us to an important consideration, for, although Jack and Sue had no authority to pretermit Jack's obligation via the March 19 letter, it appears beyond peradventure that Jack has, in fact, long since paid what he has owed to support Melinda; he just did not pay it to Sue.
Alexander addresses the point. In that case, as here, a supporting parent made payments directly to the child following a de facto change of custody. As here, the party ordered to pay the support had filed no petition to modify. The Court reminded one and all that the better practice would have been to seek court approval of the support modification and made clear that a party making an extra-judicial modification does so at his peril. Alexander, 494 So.2d at 367-68. The Court nevertheless found the only change of substance was that the father had discontinued use of the mother as a conduit for financial support for the child, stating:
If we affirm the chancellor's back award of child support to Mrs. Alexander, we will create a situation of unjust enrichment in Mrs. Alexander. This is true because during the entire period of time for which Mrs. Alexander claimed support Mr. Alexander had the child in his custody, was supporting the child, and furthermore, was paying the child the $200.00 a month child support called for by the decree.
Under these circumstances Mrs. Alexander would have no claim to the back child support except to accept it as a conduit *435 to pass it directly to the child or back to Mr. Alexander for the use and benefit of the child. We consider this a vain and foolish act. In our opinion, when the custodial parent received full child support during the time she had custody of the child, did not complain when the child moved in with the other parent, and accepted this arrangement for 20 months with child support being paid directly to the child, the parent paying the support is entitled to full credit for all support paid to the child. He is also entitled to [credit for] any additional support which he has evinced by satisfactory proof to the trial court.
Alexander, 494 So.2d at 368. In today's case, the (now) complaining parent "accepted this arrangement" for not just twenty months but for more than nine years. We have recently reaffirmed the Alexander principles in Nichols v. Tedder, 547 So.2d 766 (Miss. 1989):
Thus, Amanda's emancipation and the fact that Darren moved into the father's home does not automatically grant him the right to receive a credit for child support payments made after that point in time. However, under proper circumstances, the father should be allowed the opportunity to prove before a trial judge that he should receive such a credit.
Nichols, 547 So.2d at 781. Citing Alexander, the Court found there was no logical reason to require the father to continue the son's support payments to the mother after the son had moved in with the father. The father was entitled to credit for support in fact provided, as well as for payments made on behalf of the oldest child after she reached 21. Nichols, 547 So.2d at 781.
Alexander declares the principle that in a case such as this, the father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother. Nichols recognizes that principle as well, which applies only where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing and other necessities for the child.[1] Determining whether this is equitable and necessary to avoid unjust enrichment of the wife requires that the Court bear in mind the obligation of each parent to provide support for children. See Tedford v. Dempsey, 437 So.2d 410, 422 (Miss. 1983). On the other hand, payments such as college tuition will seldom qualify, as they do not diminish the child's need for food, clothing and shelter. See Lawrence v. Lawrence, 574 So.2d at 1382; Nichols v. Tedder, 547 So.2d at 768-69.
Applied to the present action, these principles require first that we affirm the finding that Jack discharged his obligation to support Melinda from and after March 19, 1980, until her emancipation. We join the Court below in its view that the evidence is "uncontradicted" that Jack "supported his children, especially Melinda." At the very least, the Court has given us a finding of fact supported by substantial *436 evidence which, given our familiar and limited scope of review, we may not disturb. Lawrence v. Lawrence, 574 So.2d at 1382; Nichols v. Tedder, 547 So.2d at 781; see also, Pace v. Owens, 511 So.2d 489, 491-92 (Miss. 1987). To be sure, this finding is not as precise as we would prefer, but it is more than sufficient to carry the day. See Smith v. Smith, 545 So.2d 725, 727 (Miss. 1989); Kelly v. Shoemake, 460 So.2d 811, 817 (Miss. 1984); Munford, Mississippi Supreme Court Practice § 15.5 (1989).
Sue struggles mightily to avoid the impact of this view, focusing her fury on the March, 1980 letter and the Chancery Court's treatment of it. First, she argues the rule noted above that divorced parents may not extra-judicially make a legally enforceable custody modification. She says she signed the letter under great duress. Even should the letter have effect, Sue says its terms limit Jack's child support reduction to the time Melinda "remain[ed] in ... [Jack's] custody and in a school for which ... [Jack] pay[s] the expense." Each argument is well wide of Alexander's mark. Whether the letter changed Melinda's legal custody is a matter that has been moot for many years. More to the point, nothing Sue says negates the fact and the Court's finding that Jack provided support for Melinda as he had been ordered to do. Sue's arguments are thus seen as so much rhetoric and without legal force or effect.

V.
The principles recited above suggest merit in Jack's cross-appeal, as well. On this cross-appeal, we reverse and on remand direct consideration of the following matters: For one thing, the Court had authority to find that Jack had provided legally obligated support for Melinda from September, 1979, when she first went to French Camp. In the case of Michelle, the Court should consider whether, once she left Sue's home and moved in with Jack and thereafter began school at Hinds Junior College, Jack, in fact, paid to her or for her benefit the support he had legally been ordered to pay. Finally, in Martha Nell's case, the Court should consider whether, once she began attending Mississippi State University, Jack did, in fact, pay the support he was obligated to pay. We note particularly that, after Martha Nell began at State, Jack made $250.00 monthly deposits to a checking account in her name, in addition to paying her tuition, room and board.
In view of the foregoing, we vacate the order adjudging Jack to be in civil contempt for his failure to pay support.
ON DIRECT APPEAL, AFFIRMED; ON CROSS-APPEAL, REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
HAWKINS, P.J., concurs with separate written opinion, joined by ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, J.
McRAE, J., dissents with separate written opinion.
HAWKINS, Presiding Justice, specially concurring:
Justice McRae makes a valid criticism.
While there is an obvious difference between alimony and child support payments, the principle is the same as to the legal obligation of the spouse or parent to pay. The spouse receiving alimony, or the custodial parent receiving child support as the case may be, in either instance has a "fixed and vested" right to matured and unpaid alimony or child support payments. It is rather tenuous to suggest, as the majority does in its footnote, that the parent's legal obligation to pay matured and unpaid child support installments is somehow different from the spouse's duty to pay due and unpaid alimony installments.
This being said, it is also true that a court of equity has the authority to grant equitable relief in appropriate cases to otherwise valid and legal obligations. The chancellor in this case, acting as a court of equity, did so. I cannot say he was manifestly *437 wrong or abused his discretion under the unusual facts of this case.
I therefore concur in the result the majority reaches.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, J., join this opinion.
McRAE, Justice, dissenting:
This opinion symbolizes what lawyers and judges have been saying for years: "That's the law this week, but who knows what it will be next week?"
While I am sympathetic with the defendant's position, I dissent from the majority opinion in this case as it is inconsistent with the holdings of this Court in Lewis v. Lewis, 586 S.W.2d 740 Miss., 1991.
In Lewis, this Court held that after a final decree has been rendered, the wife could reach back to a temporary order and say that she wanted to be paid for the temporary alimony due to her at that time. The Court granted the wife's demand, even though both parties had agreed to waive all claims pursuant to their irreconcilable divorce. The Court in Lewis explained that a chancellor's order cannot be changed between the parties unless it is done with the consent of the court. In Lewis we stated:
As noted by the decisions of this Court, an obligation owed by one spouse to the other becomes fixed and vested when due and unpaid. This obligation will not be discharged or amended in an agreement between the parties unless it is explicitly plead before an informed court. To amend a prior decree, even if a temporary one, the parties hereafter should recite the change and present the same to the Court, otherwise we are in the inexplicable position of having an order of the Court changed by the parties without consideration for or by the Court.
Varner represents the "flip side" of the Lewis case. Obviously, the defendant, Jack Varner, should be granted some relief. However, with our ruling in Lewis, it is difficult to do so. The majority in Varner noted that the parties made an agreement without the consent of the court on 3/19/80 and that Jack Varner in June of 1980 arbitrarily, and without order of a court, reduced payments again and continued this practice for nine years. How is it that Jack Varner can get relief without his actions complying with this Court's ruling, where parties in Lewis could not even enter a mutual agreement absent the chancellor's consent? The majority stated and very aptly noted: "The parties effected this new arrangement, albeit without advice to or consent from the Chancery Court, and Jack dropped his child support payments to Sue from $600.00 to $400.00 per month." This was done in March of 1980. The majority noted:
In June of 1980, coincident with Michelle's coming to live with him, Jack reduced his monthly payment to Sue from $400.00 to $200.00.
For the next nine years, Jack paid Sue $200.00 per month, ostensibly for Martha Nell, and all seemed tolerably well... .
At no time did Jack seek Chancery Court approval of any of these reductions in child support, nor does it appear that Sue made any objection.
On August 14, 1991, we decided Lewis; two weeks later we are saying just the opposite and giving relief to Varner. The majority goes to great lengths to distinguish Lewis from Varner, when in truth both are money judgments. It is my opinion, however, that no distinction should be made between the procedure for altering child support payments and settling temporary alimony matters. Varner should be required to abide by our previous decisions in Lewis. But for Lewis, I would join the majority.
Again I am reminded of the statement, "That's the law this week, but who knows what it will be next week?"
NOTES
[1] Our recent decision in Lewis v. Lewis, 586 So.2d 740 (Miss. 1991) addresses the alimony analogue of the automatic vesting rule which is our starting point above. Lewis holds temporary alimony subject to that general rule. The reason we do not consider and discuss Lewis (or, for that matter, any other alimony cases) is that, despite the analogy between alimony and child support, it is not complete, and for reasons beyond those noted above. We hope to avoid the impression that we consider the two types of cases completely analogous and thus interchangeable. To the extent the alimony automatic vesting rule is analogous to the child support automatic vesting rule, Lewis is compatible with what we say here, in the same sense that the child support cases cited above, from Premeaux to Hambrick are. As we discuss above, Alexander v. Alexander first addressed the equities peculiar to this case and explains why, as here, automatic vesting rule should be sensitively enforced so that it does not yield an unjust enrichment of the custodial parent. Lewis, of course, is distinguishable, to the extent it may be analogous, for the further reason that, here, the automatically vested (child support) payments appear to have been made, while in Lewis all agree the vested (temporary alimony) payments were not made, and the ex-husband was claiming they had been forgiven in an agreement never directly disclosed to the Court.