# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-02157-SCT

*EDWARD E. SHELNUT*

*v.*

*THE DEPARTMENT OF HUMAN SERVICES OF THE STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2007 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PATRICIA PETERSON SMITH |
| ATTORNEY FOR APPELLEE: | JAMES JASON BAYLES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 03/19/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     This case has been litigated for nearly twenty years in the court systems of two sovereign nations, including a foray into this Court. *See **Dep't of Human Servs. v. Shelnut,** 772 So. 2d 1041 (Miss. 2000) ("**Shelnut I**").* The appellant asks this Court to reverse a chancellor's decree recognizing the registration and enforcement of a foreign judgment for child support. We decline.

# HISTORY OF PROCEEDINGS

¶2.    In 1981, Gaye-Lynn Kern ("Kern") and Edward Shelnut ("Shelnut") were married in Saskatoon, Saskatchewan. They moved to Jackson, Miss., after briefly living in Atlanta, Ga. They remained in Jackson for the duration of their marriage. One child, Margaret-Anne, was born on July 31, 1986. In 1989 they experienced marital difficulties.

¶3.    On April 22, 1989, Kern returned to her native country, Canada, with Margaret-Anne. Kern and Margaret-Anne have lived there ever since. On April 27, 1989, Shelnut filed a complaint for custody in the Chancery Court of the Second Judicial District of Hinds County, but failed to effect service on Kern.

¶4.    In October 1989, Kern filed an action in the Unified Family Court ("UFC") in the Queen's Bench Judicial Centre of Saskatoon, Saskatchewan. Shelnut was served with this action, hired an attorney and answered. He contested personal jurisdiction and child support, *inter alia*. Kern sought monthly child support of $400[1] and monthly alimony of $350. The pleadings revealed Shelnut's address in Mississippi, where the couple had lived while married and where he remained afterwards. Kern informed the Canadian court that Shelnut had filed an action in Mississippi, and that she had filed a motion to dismiss those proceedings. Shelnut's financial statement, which included his annual salary, savings, and property ownership, were filed in the UFC case.

¶5.    A temporary hearing was held in the Canadian action, although Shelnut did not attend. Shelnut's Canadian attorney submitted a Brief of Law contesting personal jurisdiction. In an order dated December 4, 1989, the Canadian court exercised its "jurisdiction over the

---

[1]All dollar amounts are in U.S. dollars.

2

matters of interim custody, interim child maintenance and interim spousal maintenance." The court ordered Shelnut to pay child support of $300 for the month of December 1989. The court deferred "matters of access, ongoing interim child maintenance and interim spousal maintenance." On January 17, 1990, another order was entered in which Shelnut was ordered to pay ongoing child support of $325 per month, beginning February 1, 1990. On May 2, 1990, Shelnut filed a divorce complaint in the Chancery Court of the First Judicial District of Hinds County, but never obtained service on Kern.

¶6. In June 1990, the Canadian court entered an order declaring that a divorce was granted, to take effect thirty-one days from the date of judgment, unless appealed. The two-page divorce judgment granted custody of Margaret-Anne to Kern, and ordered Shelnut to pay child support of $325 per month, with the payments to be made through the Maintenance Enforcement Office in Regina, Saskatchewan.[2] Visitation and alimony were not mentioned. Shelnut asserts that he was not given notice of the divorce hearing until he received the judgment in the mail. He further asserts that he received the judgment three days before the divorce was final. He testified that he chose not to pursue an appeal. Shelnut testified that he consulted with a Canadian lawyer who told him that such an appeal would require a $16,000 retainer and was not likely to be successful.

¶7. In September 1990, the Mississippi divorce complaint was consolidated with his earlier custody filing. The consolidated complaint was dismissed for mootness by an order dated January 8, 1991. The order acknowledged the Canadian court's jurisdiction to grant

---

[2]The Maintenance Enforcement Office in Regina has maintained Statements of Arrears from the 1990 court orders since that time.

a divorce and stated that "no purpose could be served by pursuing a divorce in . . . Mississippi." No appeal was taken of this order.

¶8. On January 25, 1999, Kern registered the Canadian judgments for enforcement in Mississippi, through the Mississippi Department of Human Services ("MDHS"). Margaret-Anne was then twelve years old. In August 1999, the Chancery Court of the Second Judicial District of Hinds County dismissed the attempt to enforce the Canadian judgments. The chancellor ruled that the divorce was valid, but that the Canadian court lacked the required personal jurisdiction over Shelnut to require him to pay child support.

¶9. This Court reversed the chancery court in *Shelnut I*, holding that the personal jurisdiction issue was barred by res judicata, because Shelnut had challenged personal jurisdiction in Canada and had lost. The *Shelnut I* Court ruled that the Canadian court had jurisdiction over both of the parties and the dissolution of the marriage. The case was remanded to chancery court for enforcement. *See Shelnut I*, 772 So. 2d at 1041. Shelnut did not file a motion for reconsideration.

¶10. In September 2003, Shelnut moved to dismiss the enforcement action for failure to prosecute. The chancery court entered a judgment of dismissal after MDHS failed to respond. In November 2003, MDHS successfully moved to set aside the dismissal. In September 2005, MDHS filed a Notice of Registration Amended. Margaret-Anne was then nineteen years old. Shelnut contested the amended registration, but waited two years before claiming that MDHS had not sought leave of the court to amend.

¶11. The chancery court held a hearing in September 2007 on the amended registration of the Canadian order. The chancellor ruled from the bench that the hearing would be "treat[ed]

4

as a new hearing for all purposes." In his memorandum opinion, the chancellor ruled that the Canadian judgments would be enrolled for enforcement. The opinion included a ruling that the 2005 amended registration was proper under Mississippi Rule of Civil Procedure 15(a) and related back to the 1999 registration in accordance with Rule15(c), as the action was one and the same.[3] Thus, the registration was timely because it related back to 1999, when Margaret-Anne was twelve and age of majority was not at issue. Later, the chancellor issued an amended opinion, clarifying his determination that the applicable age of majority in Canada was eighteen. Based on this determination, he ruled that the accrual of child support would cease on Margaret-Anne's eighteenth birthday, July 31, 2004.

¶12.   Over the course of these proceedings, MDHS informed the chancery court that it represented Kern in the child-support action. MDHS made no representation that it was representing Margaret-Anne. Margaret-Anne has not filed any pleadings in this matter, nor has she appeared as a party.

¶13.   Shelnut has not honored any Canadian orders and has never paid any child support. Except for a brief conversation during a court hearing in 1991, he has not seen or spoken to his daughter since 1989. Apart from temporary work assignments, Shelnut has remained in Mississippi, while Kern and Margaret-Anne have remained in Canada.

---

[3]The only differences in the 1999 and 2005 registrations were the date and the amount of arrearage.

**ISSUES**

¶14. This court will consider:

(1) Whether the chancellor erred in holding that Shelnut's arguments against Canadian jurisdiction are precluded by this Court's holding in *Shelnut I*.

(2) Whether Kern's conduct provided Shelnut a legal excuse for failing to pay child support.

(3) Whether the chancellor erred in determining the applicable age of majority under Canadian law.

(4) Whether the 1999 and 2005 registrations were timely.

(5) Whether the chancellor erred in holding that the 2005 Notice of Registration should be treated as an amended complaint and, if not, whether he erred in relating it back to the 1999 registration.

(6) Whether Margaret-Anne is a necessary party.

(7) Whether the chancellor was biased to such an extent that Shelnut was not afforded a neutral forum.

**STANDARD OF REVIEW**

¶15. "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-626 (Miss. 2002). However, "[r]egarding legal questions, this Court applies a de novo standard of review." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190 (Miss. 2008).

**ANALYSIS**

I.   **Whether the chancellor erred in holding that Shelnut's arguments against Canadian jurisdiction are precluded by this Court's holding in *Shelnut I*.**

6

¶16.   *Shelnut I* lists the alternatives a person has when served with a suit from another jurisdiction, as follows:

> First, he may ignore the complaint and summons, and, then, if a default judgment is issued against him, he may challenge that judgment on jurisdictional grounds in a collateral proceeding when the plaintiff seeks to enforce the judgment. Second, he may voluntarily waive any lack of personal jurisdiction and submit to the distant court's jurisdiction. And third, he may submit to the jurisdiction of the court for the limited purpose of challenging jurisdiction. The Supreme Court has explained that by taking this third route, . . . 'the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings.'

*Shelnut I*, 772 So. 2d at 1045-46 (quoting *Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)) (internal cites omitted). In the first case, Shelnut conceded that he had received sufficient service of process for the Canadian actions.  *See Shelnut I*, 772 So. 2d at 1046 n.3.  He responded to the Canadian complaint by raising the issue of personal jurisdiction. His Canadian lawyer also submitted a Brief of Law on this issue.  After asserting its jurisdiction, the Canadian court issued a judgment granting a divorce and ordering Shelnut to pay child support.  Shelnut was mailed a copy of the Canadian judgment in time to appeal it, but chose not to do so.  Later, in chancery court, he argued that he could collaterally attack jurisdiction after losing a challenge on the same issue in Canada.  This Court ruled that he had taken the third route and that res judicata applied to the Canadian decision. *See id.* at 1046-48.  After *Shelnut I* was decided, if he still felt aggrieved, he had the option of filing a motion for rehearing, but he chose not to do so.

7

¶17.    Shelnut seeks to retry an issue decided in *Shelnut I*, lack of personal jurisdiction. Shelnut now asserts that he received process only in the first Canadian proceeding, but cannot recall receiving service of process as to the second proceeding (divorce and child support). He asserts that because the orders bear different UFC numbers, separate actions must have been filed. However, he offered no proof at trial that two separate actions were filed. Citing the lack of proof, and this Court's holding in *Shelnut I*, the chancellor found that there was only one Canadian action.

¶18.    We conclude that Shelnut has exhausted his right to another day in court, both in Saskatchewan and Mississippi. The chancellor did not err in holding that new arguments over Canadian jurisdiction are precluded.

**II.    Whether Kern's conduct provided Shelnut a legal excuse for failing to pay child support.**

¶19.    Shelnut argues that *Cole v. Hood,* 371 So. 2d 861 (Miss. 1979), provides a legal excuse for him to avoid paying child support. In *Cole*, the mother took the children and actively hid them from their father by moving around the country and not informing the father of their addresses. Despite the father's efforts, he was unable to find the children for eight years. Once he did find them, the mother then attempted to enforce a child-support order against him for the accrued support for those eight years. *See id.* at 863. This Court affirmed the trial court's dismissal of the mother's claim. The trial court had held that she did not come to equity with clean hands. Her actions had made it impossible for the father to comply with the child-support order. *See id.* at 864.

8

¶20.     The facts in this case are more like those of *Cunliffe v. Swartzfager,* 437 So. 2d 43 (Miss. 1983). In *Cunliffe*, the wife took the child to a foreign country and the father did not see his child for several years. *See id.* at 44. This Court reversed the trial court (in part), which had followed *Cole* in relieving the father of the requirement to pay. *See id.* at 45-46. This Court reasoned that it was not impossible for the father to pay. *See id.* at 45-46. He knew generally where the child was and could have paid the support through his former wife's relatives, who knew her address. *See id.* at 45-46.

¶21.     The chancellor made a finding of fact that "Shelnut knew all along where his daughter was and Kern did not hide his daughter from him." The chancellor found the following testimony persuasive: (1) When asked how his daughter had survived, Shelnut stated that Kern had a wealthy family.[4] (2) Shelnut's parents went several times to visit Margaret-Anne. This included one trip to North Dakota in which Shelnut's parents took Margaret-Anne's Mississippi cousins to visit with her. Even though Shelnut was aware of these visits, he never showed any interest in joining his parents on any of these trips. (3) When asked why he did not seek a modification of the Canadian orders, Shelnut replied that he could not afford it. The court gave little credence to this response, observing that Shelnut has been able to hire several lawyers to help him avoid his responsibilities over the last two decades. (4) Shelnut had Margaret-Anne's address during this time, as he showed by mailing letters, cards, and gifts to Margaret-Anne over a ten-year period. (5) In addition, Kern sent cards, pictures and letters, including return addresses, to Shelnut's family.

---

[4] The chancellor concluded that Shelnut believes that support of his child is someone else's responsibility.

¶22. We conclude that Kern's conduct, coupled with Shelnut's inaction in the Canadian courts, does not provide a legal excuse for failing to pay child support. Shelnut knew generally where Margaret-Anne was and could have paid the support through the Maintenance Support Office, as ordered. We find no error in the chancellor's analysis and ruling.

### III. Whether the chancellor erred in determining the applicable age of majority under Canadian law.

¶23. With some exceptions inapplicable to this issue, Mississippi Code Annotated section 93-25-87 calls for the issuing state's law to apply under the Uniform Interstate Support Act ("UIFSA"). *See* Miss. Code Ann. § 93-25-87(1) (Rev. 2004). That act defines "state" to include "[a] foreign country or political subdivision jurisdiction that . . . has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this chapter." Miss. Code Ann. § 93-25-3(u)(ii) (Rev. 2004). Saskatchewan enacted the Reciprocal Enforcement of Maintenance Orders Act in 1996. *See* The Reciprocal Enforcement of Maintenance Orders Act, S.S., ch. R-4.2 (1996).

¶24. After reviewing the Canadian Divorce Act and the Family Maintenance Act,[5] the chancellor determined that the age of majority in Saskatchewan is eighteen. Shelnut argued an outdated version of the Canadian divorce act which stated:

---

[5]The Family Maintenance Act is in force in Saskatchewan. "Child" is defined as "a person who is under the age of 18 years." The Family Maintenance Act, S.S., ch. F-6.2, s.2 (1997).

10

1. This Act may be cited as the Divorce Act.

2. (1) In this Act, . . . "child of the marriage" means a child of two spouses or former spouses who, at the material time,

(a) is under the age of *sixteen years*, or

(b) is *sixteen years* of age or over and under their charge but unable, by reason of illness, disability or other cause, to withdraw from their charge or to obtain the necessaries of life; . . . .

However, the current version of this Act states the following:

2. (1) In this Act, . . . "age of majority," in respect of a child, means the age of majority as determined by the laws of the *province* where the child ordinarily resides . . . .

Divorce Act, 1985 R.S.C., 1985, ch. 3 (2nd Supp) (Can.) (emphasis added).

¶25.    Saskatchewan's Age of Majority Act makes eighteen the age of majority in that province:

Every person attains the age of majority and ceases to be a minor on attaining the age of eighteen years.

The Age of Majority Act, R.S.S., ch. A-6, s.2 (1978).

¶26.    The 1990 divorce judgment cites the authority of the Canadian Divorce Act, a federal law applicable in Saskatchewan.  Margaret-Anne has been a resident of Saskatchewan since 1989, so the Age of Majority Act, a Saskatchewan provincial statute, would apply to her. Thus, we conclude that the chancellor did not err in determining that eighteen is the applicable age of majority.

**IV.    Whether the 1999 and 2005 registrations were timely.**

**A. The 1999 Registration**

¶27.    Under the UIFSA, a child-support order "is registered when the order is filed in the registering tribunal of this state." Miss. Code Ann. § 93-25-85(1) (Rev. 2004).  MDHS first

registered the Canadian order (issued June 1990) in January 1999, when Margaret-Anne was twelve.

¶28.    In actions for arrears of child support, UIFSA's choice-of-law provision allows use of either Mississippi's statute of limitations or that of the issuing state, whichever is longer. *See* Miss. Code Ann. § 93-25-87(2) (Rev. 2004).  The chancellor used Mississippi law.

¶29.    Mississippi's applicable statute of limitations requires actions to be commenced within three years against Mississippi residents, such as Shelnut.

> All actions founded on any judgment or decree rendered by any court of record without this state shall be brought within seven years after the rendition of such judgment or decree, and not after.  However, if the person against whom such judgment or decree was or shall be rendered, was, or shall be at the time of the institution of the action, a resident of this state, such action, founded on such judgment or decree, shall be commenced within three years next after the rendition thereof, and not after.

Miss. Code Ann. § 15-1-45 (Rev. 2003).  However, the statute is tolled while the child remains a minor:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law . . . .

Miss. Code Ann. § 15-1-59 (Rev. 2003).

¶30.    In ***Wilson v. Wilson***, 464 So. 2d 496 (Miss. 1985), a mother brought a contempt action twenty years after a divorce decree.  Both children were emancipated, but the seven-year statute of limitations had not run.  *See **id.*** at 497.  This Court recognized that child support is a legal duty owed to the child.  Even though the action must be brought by a guardian who is not under the disability, the statute of limitations is tolled until the disability of infancy is

12

removed upon emancipation. *See id.* at 498 (citing *Weir v. Monahan*, 67 Miss. 434, 7 So. 291 (1889)). The *Wilson* court detailed the philosophy behind this rule as follows:

> To allow the statute of limitations to run during the disability of the minor, the very period through which the minor needs and is entitled to the support of his parents, would defy reason. To bar the child because of a parent's failure to timely assert the child's claim for support is to deprive the child of that support which belongs to him for reasons over which the child has no control.

*Wilson*, 464 So. 2d at 499. In *Vice v. Dep't of Human Servs.*, 702 So. 2d 397 (Miss. 1997), this Court followed *Wilson*, affirming a judgment in which a child-support order was enforced even though it was brought six years after the order. *Vice*, 702 So. 2d at 398.

¶31. The three-year statute of limitations applicable to Shelnut under Mississippi law was tolled while Margaret-Anne remained a minor. The tolling applied to Kern and MDHS, though neither was under such a disability. Margaret-Anne was twelve years old in January, 1999. Therefore, we conclude that the 1999 registration was timely.

### B. The 2005 Registration

¶32. The *Vice* and *Wilson* cases allowed support orders to be enforced even though they were brought years after the children had become emancipated. In *Vice*, this court stated, "That the child has been emancipated does not pretermit recovery of vested but unpaid child support." *Id.* at 401 (quoting *Varner v. Varner*, 588 So. 2d 428 (Miss. 1991)). "We have plainly allowed parents to sue to obtain unpaid child support where the children have been emancipated at the time of the suit." *Id.* at 402 (citing *Wilson*, 464 So. 2d at 496; *Varner*, 588 So. 2d at 428).

¶33. The three-year statute of limitations applicable to Shelnut under Mississippi law was tolled while Margaret-Anne remained a minor. Tolling ceased when she became eighteen

13

(the Saskatchewan age of majority) on July 31, 2004. Kern and MDHS then had three years to register the order. The order was registered by the submission of the Notice of Registration Amended in September 2005. Margaret-Anne was then nineteen years old. Thus, we conclude that the 2005 registration was timely, and would have been so, even if it were the first attempt to enforce the order. We find no error as to this issue.

**V.      Whether the chancellor erred in holding that the 2005 Notice of Registration should be treated as an amended complaint and, if not, whether he erred in relating it back to the 1999 registration.**

¶34.    The chancellor's determination of the age of majority was not essential to the judgment, but only to the calculation of the amount due. The chancellor based his judgment on his finding that the 2005 registration was an amended complaint which should relate back to 1999, when age of majority was not at issue. The chancellor set the entitlement to child support to the date of Margaret-Anne's eighteenth birthday, July 31, 2004. As eighteen is the applicable age of majority, even if the 2005 registration were the first attempt to register this judgment, we hold that the statute of limitations would still not bar it.

¶35.    Further, the issue was not raised in the 2005 motion to contest the validity of the order, but was first raised two years later in the Motion to Dismiss; thus, the issue was waived by Shelnut. We find no error.

**VI.    Whether Margaret-Anne is a necessary party.**

¶36.    In *Vice*, this Court held that, even though the child holds the legal right to accrued child support, a former custodial parent may sue to enforce an order even after the child has become emancipated. *See Vice*, 702 So. 2d at 401. *See also Brown v. Brown*, 822 So. 2d 1119, 1121 (Miss. Ct. App. 2002). "*Either the child or the former custodial parent* may

14

bring an action against the defaulting parent . . . ." *Vice*, 702 So. 2d at 401 (emphasis added). In *Vice*, the mother attempted to enforce a Louisiana child-support order for payments that accrued while she was supporting the children before they became emancipated. She filed two years after the child reached majority. *See id.* at 398.

¶37.    Shelnut's reliance on *Taylor v. Taylor*, 478 So. 2d 310 (Miss. 1985), is misplaced. In that case, the father attempted to modify a divorce settlement in which there had been no award of custody or child support because all the children were emancipated at the time of the divorce. *See id.* at 311-12.

¶38.    Either Margaret-Anne or Kern could have brought the action. MDHS, representing Kern, filed for enforcement. We find no error.

### VII.    Whether the chancellor was biased to such an extent that Shelnut was not afforded a neutral forum.

¶39.    Shelnut argues that questions and comments made by the chancellor show that he had a personal bias against Shelnut, thereby denying him a neutral forum. Shelnut directs this Court to the chancellor's comment that he was not impressed with Shelnut's self-serving testimony. Shelnut also claims in a post-trial motion that the court "stated to attorneys in chambers that it already knew how it would rule, but would allow [Shelnut] to attempt to make a case." There is no record following these statements of a request for recusal.

¶40.    A judge is to be considered "qualified and unbiased unless evidence presented produces a reasonable doubt as to the judge's impartiality." *Weeks v. City of Clinton (In re City of Clinton),* 920 So. 2d 452, 458 (Miss. 2006) (quoting *Turner v. State,* 573 So. 2d 657, 678 (Miss. 1990)). An appeals court is to "ask whether 'a reasonable person, knowing all

15

of the circumstances, would harbor doubts about . . . impartiality.'" ***Id.*** In ***In re City of Clinton***, the chancellor made a statement of personal opinion that was not based on the applicable rule of decision in the case. This Court held that this alone was not evidence of disqualifying bias, but remanded to allow the chancellor to make the decision on the appropriate law and not on personal opinion. Here, the chancellor heard all the evidence from both sides and then issued a thoughtful opinion based on the appropriate law.

¶41.   The chancellor also commented on the credibility of a witness. In his memorandum opinion, the chancellor found that Shelnut's testimony was "self-serving and wholly lacking in factual subtantiation." However, the chancellor did not make an inappropriate comment showing disqualifying prejudice. He heard all the evidence, and at the conclusion of the evidence, based his opinion on the applicable law and his own findings of fact. Therefore, we conclude that Shelnut was not denied a neutral forum.

<strong>CONCLUSION</strong>

¶42.   Based on the analysis above, except for the calculation of the judgment, we affirm the judgment of the Chancery Court of the Second Judicial District of Hinds County. We remand for the limited purpose of recalculating the judgment amount, taking into consideration the December 1989 and January 1990 Canadian orders, along with the statement of arrearages prepared by Saskatchewan Maintenance Enforcement Office, attached to the notice of registration.

¶43.   **AFFIRMED IN PART; REVERSED IN PART AND REMANDED**.

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**