CHANDLER, Justice,
concurring in part and dissenting in part:
¶ 32. I agree with the majority’s decision that Sandra presented insufficient evidence to support the chancellor’s finding that she was entitled to a credit against her child-support arrearage for the amounts allegedly garnished from her paycheck. I disagree with the majority’s analysis and resolution of the issue of Sandra’s entitlement to credit for March 2002 to April 2004, the period in which the chancellor determined that Nicki lived with Sandra. Under the majority’s reasoning, assuming the chancellor correctly determined that Nicki lived with Sandra, the chancellor erred by finding that Sandra was entitled to a credit because “Sandra did not present any proof that she had made actual payments for the benefit of [Nicki] that she would not have made without Nicki being present.” I write separately because I believe the majority requires excessive proof to support a determination that a noncustodial parent is entitled to credit for child-support arrear-age that accrued during the time the child lived with the noncustodial parent under a de facto change in custody.
¶ 33. We previously have held that the standard for a noncustodial parent to receive a credit against a child-support ar-rearage is proof by a preponderance of the evidence that the noncustodial parent has, in fact, paid the support directly to the child for the basic living expenses of food, clothing, shelter, and other necessities. Varner v. Varner, 588 So.2d 428, 435 (Miss.1991). “The law remains firm that court-ordered child support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made.” Id. at 434. Accordingly, a child-support payor “may receive credit for having paid child support where, in fact, he [or she] paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the [non-payor].” Id. at 435.
¶ 34. The majority finds that Sandra failed to prove that, during the period the chancellor found Nicki lived with her, she had spent money on Nicki as intended by the support order in the amount of $125 per month. Sandra’s proof of expenditures on Nicki consisted of her own testimony that Nicki had lived with her for approximately two years, that she had supported Nicki during this period, and that she had fed Nicki and brought her to school every day. Although the majority does not disturb the chancellor’s finding that Nicki lived with Sandra, it finds that Sandra’s testimony was insufficient to have enabled the chancellor to find by a preponderance of the evidence that she expended $125 per month for Nicki’s basic living expenses. The majority would require Sandra to provide evidence as to her specific expenditures for Nicki’s basic living expenses, consisting, perhaps, of corroborating testimony, or of documentation such as receipts, canceled checks, or a personal spreadsheet. The majority also places a burden upon Sandra to prove that each *679 expense would not have been incurred “but for” Nieki’s presence in her home.
¶ 35. When there has been a de facto change of custody from the custodial parent to the noncustodial parent, the new custodial arrangement substantially increases the likelihood that the child-support payor/de facto custodian has made expenditures toward the child’s basic living expenses. Therefore, I believe that a de facto custody change, while not creating a presumption, is additional evidence that supports a finding that a noncustodial parent has made expenditures toward a child’s basic living expenses. Indeed, in Varner, the Court did not require documentation or corroborating testimony to affirm the chancellor’s finding that the child-support payor was entitled to a credit against the arrearage that accrued when the child was living with the payor. Id. at 435-36.
¶ 36. Considering the chancellor’s determination that Nicki had lived with Sandra, Sandra’s testimony about her expenditures for Nicki during that time, and the relatively small amount of monthly child support Sandra was obligated to provide, I would find that the chancellor was well within his discretion in concluding that Sandra had expended $125 per month for Nicki’s food, clothing, shelter, and other necessities during the period that Nicki had lived with her. I would remand for a determination of Sandra’s arrearage with a credit for the amount attributable to the approximate two-year period during which Nicki lived with Sandra.