797 So.2d 1008 (2001)
Susanne Marie DORR (Howell), Individually, and as Next Friend of Houston Trey Howell, Appellants,
v.
Houston Jacento DORR, Jr., Appellee.
No. 1999-CA-01123-COA.
Court of Appeals of Mississippi.
April 3, 2001.
*1010 G. Charles Bordis IV, Ocean Springs, Attorney for Appellants.
Elise Epperson-Sims, Bay St. Louis, Attorney for Appellee.
Before McMILLIN, C.J., PAYNE, and LEE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. The case now before the Court involves a dispute over a substantial amount of child support alleged to be owed by Houston Jacento Dorr to his former wife, Susanne Marie Dorr (Howell), for a period ranging from 1985 through 1994. The principal issues in dispute are: (a) whether the chancellor erred by allowing credit for certain payments Mr. Dorr alleged he had made when the only evidence of such payments consisted of a series of entries in Mr. Dorr's personal checking account register, (b) what effect the chancellor ought to have given to an alleged extrajudicial agreement between the parties to modify Mr. Dorr's monthly child support obligation, (c) how to properly calculate interest due on past due child support, and (d) whether the chancellor erred in denying attorney's fees to Mrs. Dorr for pursuing collection of the arrearage.
¶ 2. Finding that, in some respects, the chancellor erred in his factual findings and further finding that the chancellor abused his discretion in fashioning a remedy in this case, we vacate the judgment and remand for further proceedings consistent with this opinion.

*1011 I.

Facts
¶ 3. The parties were divorced in 1983 and Mrs. Dorr received custody of the minor child born of the marriage. Mr. Dorr was ordered to pay periodic child support and the divorce judgment ordered that, in recognition of this support payment, Mr. Dorr would be entitled to claim the child as a dependent for income tax purposes. Mr. Dorr was less than diligent in meeting his obligations and on April 10, 1985, he was adjudicated to be in arrears on child support in the amount of $2,400. In the same order adjudicating this arrearage, the chancellor modified Mr. Dorr's monthly child support payment to $225 per month effective April 1, 1985.
¶ 4. Again, Mr. Dorr seems to have failed to fully meet his obligations under this modified judgment though he did make some sporadic payments to Mrs. Dorr after April 1985. However, Mrs. Dorr made no further formal attempt to enforce the payments for an extended period of time. In January 1988, Mr. Dorr executed and delivered to Mrs. Dorr a writing in which he relinquished his right to claim the child as a dependent for tax purposes and acquiesced in Mrs. Dorr being able to do so, this arrangement being in derogation of the divorce judgment. Mr. Dorr contended at trial that this instrument was delivered as a part of an extrajudicial agreement between him and Mrs. Dorr that, in exchange for this concession, she would relieve him of any obligation to continue to pay periodic child support. Mrs. Dorr denied any such agreement, contending that Mr. Dorr unilaterally made the concession to her without any corresponding concession on her part.
¶ 5. By a subsequent judgment entered in another proceeding, the minor child of the parties was adopted to Mrs. Dorr and her new husband, thereby terminating any further support obligation for the child by Mr. Dorr. This adoption was effective July 19, 1994.
¶ 6. This action was commenced in August 1998 by Mrs. Dorr to collect all delinquent amounts of child support alleged to have accrued prior to the 1994 judgment of adoption. In addition, Mrs. Dorr sought to recover certain unpaid medical expenses for the child which she alleged were due under the original divorce judgment. Mrs. Dorr further sought interest on all unpaid installments and an appropriate attorney's fee for pursuing the collection of these various arrearages.
¶ 7. In a somewhat unusual ruling, the chancellor initially declined to resolve the disputed issue of fact as to whether (a) Mr. Dorr's tax dependency waiver was a part of a mutual agreement in exchange for which he would be relieved of his child support obligations or whether, (b) as Mrs. Dorr contended, it was simply a unilateral concession on Mr. Dorr's part, born out of guilt for his prolonged failure to meet his support obligation. Instead, the chancellor offered the parties a "grace period" of fifteen days during which they might mutually concede by written stipulation the existence of such an agreement and jointly agree for the chancellor to ratify the extrajudicial agreement. If the parties did so stipulate, then the chancellor apparently would have relieved Mr. Dorr of any child support payments falling due on or after January 1988. Not surprisingly, in view of Mrs. Dorr's position throughout this litigation, no such stipulation appears in the official record of the case.
¶ 8. The chancellor's judgment went on to state that, in the event the parties failed to enter into such a stipulation (which is what, in fact, occurred), the alleged agreement asserted by Mr. Dorr would be held *1012 void as (a) not being supported by valuable consideration and (b) an unenforceable attempt to extrajudicially modify a court-ordered obligation. In such event, the chancellor determined that Mr. Dorr would owe an additional $17,775 in child support, but that he would have the right to file amended tax returns for the affected years to claim the child and obtain such refund as he might be entitled based on those amended returns. The chancellor further directed that Mrs. Dorr would be required to likewise file amended returns for the same years removing the child as a dependent and thereby obligating herself to pay such additional taxes as were owed due to this change in her filing status.
¶ 9. The chancellor ordered that the various awards due to Mrs. Dorr would not accrue interest, apparently as a form of penalty for Mrs. Dorr's lengthy delay in asserting these various claims. The chancellor also declined Mrs. Dorr's request for attorney's fees, holding that Mr. Dorr was not in wilful contempt, and that Mrs. Dorr had failed to demonstrate her inability to pay any such fees.
¶ 10. Mrs. Dorr, dissatisfied with the chancellor's ruling, has appealed. We will consider the issues presented in the appeal in the same order raised by Mrs. Dorr in her brief.

II.

Issue One:

The Effect of the Tax Exemption Swap
¶ 11. The somewhat unusual means by which the chancellor handled the tax exemption waiver executed by Mr. Dorr in 1988 poses some difficulty. It is the chancellor's duty to sit as finder of fact and to resolve those disputed issues upon which the parties cannot agree based on where the chancellor determines the preponderance of the evidence to lie. Murphy v. Murphy, 631 So.2d 812, 815 (Miss. 1994). In this case, the threshold question of fact for the chancellor to resolve was whether the parties had, as Mr. Dorr asserted, entered into an agreement by which he would surrender his right to claim the child as a dependent for tax purposes in exchange for Mrs. Dorr's waiving any claim for further periodic child support payments. Only if the chancellor determined that the parties did, in fact, so agree would the issue of law arise as to what effect to give to this extrajudicial agreement.
¶ 12. However, rather than resolving this disputed question of fact, the chancellorfor reasons that are not readily apparentextended to the parties a post-trial opportunity to stipulate the existence and enforceability of this alleged agreement, though it had been the central dispute of the hearing in terms of financial impact since $17,775 in child support obligations potentially hung in the balance. The chancellor's contingency plan for resolving this disputed issue of factassuming that Mrs. Dorr did not undergo a post-hearing change of heart and confess a point which she vehemently contested throughout the proceedingstill did not resolve the disputed question of whether the parties did so agree or not. Rather, the chancellor's ruling appeared to concede that such an agreement had, in fact, been entered into but that it was unenforceable because of certain legal, as opposed to factual, considerations. Findings of fact made by the chancellor are entitled to deference when reviewed on appeal. Rakestraw v. Rakestraw, 717 So.2d 1284 (¶ 9) (Miss.Ct.App.1998). On the other hand, rulings of law are subject to de novo consideration. Consolidated Pipe and Supply Co., Inc. v. Colter, 735 So.2d 958 (¶ 13) (Miss.1999).
*1013 ¶ 13. Holding the purported agreement void is a ruling of law and not a finding of fact. The chancellor offered two reasons as to why the agreement was not enforceable. First, he concluded that the agreement was not supported by consideration. This is plainly wrong. The agreement, according to Mr. Dorr's testimony, involved the mutual surrender of vested advantages in exchange for other benefits. From Mr. Dorr's standpoint, he lost the economic advantage of claiming his son as a dependent, inevitably resulting in a higher tax obligation to him, but obtained in exchange a release from his monthly child support obligation. From Mrs. Dorr's standpoint, she suffered the economic loss of Mr. Dorr's monthly child support obligations but received, in return, the right to claim the child as a dependent for tax purposes, thereby reducing her obligation to the taxing authorities. Such an exchange of existing rights between parties is a classic example of the kind of consideration necessary to create a binding contract. Leggett v. Vinson, 155 Miss. 411, 422, 124 So. 472, 475 (1929).
¶ 14. The second reason offered by the chancellor to find the agreement void cannot be so easily disposed of. It is a general rule that court-ordered obligations for the support of the minor children of divorcing parents may not be modified by the obligor and obligee extrajudicially, but that, rather, any such proposed modification must be submitted to and approved by the court. Calton v. Calton, 485 So.2d 309, 310-11 (Miss.1986). The rule is not absolute, however, and, in certain circumstances, such agreements have been given effect when to do so does not adversely affect the true beneficiary of the obligation, i.e., the child, and to do otherwise might produce an inequitable result as between the litigants themselves. By way of example, this Court, in Wright v. Wright, gave effect to an extrajudicial agreement to lower child support due to changed circumstances that, through apparent oversight, had never been presented to the court for approval but had been honored by the parties until the fact of the failure to obtain court approval was discovered. Wright v. Wright, 737 So.2d 408 (¶ 6) (Miss.Ct.App.1998). This Court reasoned that to retroactively enforce the higher support amount that, under strict legal principles, remained in effect would be inequitable as permitting the support obligee to be unjustly enriched. Id.
¶ 15. The issue then becomes whether there are equitable principles at work in this case similar to those discovered in Wright that might suggest the propriety of enforcing the agreement. We begin consideration of that issue with the notion that, to the extent any such agreement might adversely affect the best interest of the true beneficiarywhich is, of course, the affected minor childthen it would appear doubtful that any competing equities between the adult parties themselves could override the legal obligation of support owed to that child. In Wright, the lower level of child support was intended to address the obligor's assertion of diminished income and increased visitation travel expenses occasioned by the custodial parent's move to Colorado. Id. Such changes in circumstance are, in the law of this State, an essential underpinning of any subsequent modification of a support obligation. Douglas v. Douglas, 766 So.2d 68 (¶ 8) (Miss.Ct.App.2000). In this case, Mr. Dorr would have us enforce an agreement that is not even alleged to be based upon any material change in circumstance. Rather, the agreement required Mrs. Dorr to surrender her unequivocal right to receive $2,700 per year in child support ($225 per month × 12 months) in exchange for which she became entitled to claim the child as a dependent for tax *1014 purposes, the dollar benefit of which she testified to be $4,300 total for the entire period of January 1988 through July 1994. The only non-monetary benefit to Mrs. Dorr that we can perceive to arise out of such an agreement would be that she could thereby avoid the unpleasantness associated with attempting to enforce a legally-binding support obligation against an apparently less-than-cooperative obligor. While we can concede that, in some circumstances, such a trade-off might be seen as not adversely affecting the best interest of the child, we do not think this to be such a case. Mr. Dorr was at all pertinent times gainfully employed working full-time for an agency of the State of Mississippi and commanding a salary that would have permitted him, without any significant strain on his ability to maintain a normal lifestyle for himself, to meet a child support obligation of $225 per month. Thus, under the terms of the extrajudicial agreement Mr. Dorr would have this Court enforce, Mrs. Dorr (and, more particularly, the minor child for whom those payments were intended) would be required to forego periodic payments totaling $17,775 in exchange for which Mrs. Dorr would receive an indirect financial benefit of only $4,300 together with, at least arguably, the release from the burden of a continuing judicial battle to collect child support payments due from a seemingly-hostile obligor.
¶ 16. Because of the magnitude of the sums involved, all intended to be expended for the support and maintenance of the child of the parties, we do not find any possible easing of Mrs. Dorr's continuing burden to periodically pursue collection actions against Mr. Dorr to be of such benefit, either directly or indirectly, to the child that it would be equitable to enforce the agreement according to its terms.
¶ 17. Therefore, to the extent that the chancellor declined to enforce an agreement that he apparently found, as a matter of fact, to exist we do not find error. That finding, however, brings us to the matter of the equitable relief afforded to Mrs. Dorr by the chancellor.
¶ 18. While the chancellor has broad equitable powers to fashion appropriate relief in matters such as this, we conclude that his rather involved procedure affirmatively enjoining both parties to file amended federal and state tax returns for seven separate years is, on its face, beyond the realm of reasonable discretion. It appears uncontroverted that a substantial portion of such amended returns would not even be allowed by the appropriate taxing authority as being untimely under applicable tax laws and that any such returns as accepted could arguably result in substantial underpayment penalties being assessed against Mrs. Dorr. Therefore, to the extent that the chancellor's judgment sought to compel either party to file one or more amended tax returns, we reverse.
¶ 19. Nevertheless, we are sympathetic to the underlying principle apparently supporting the chancellor's ruling on this aspect, which we discern to be the notion that it is inequitable to permit Mrs. Dorr to gain the full advantage of the purported agreement, even though we find the agreement, if there was one, unenforceable. By her own testimony, Mrs. Dorr received a very real financial benefit by virtue of Mr. Dorr's willingness, no matter what the incentive, to forego his right to claim the child as a dependent for tax purposes and to relinquish that right to her. Mrs. Dorr testified that the benefit of that right to her had been calculated to be $4,300 and that figure was not contested or rebutted by Mr. Dorr. Certainly, Mrs. Dorr understood that this financial benefit to her was derived as the direct result of an action *1015 taken by Mr. Dorr for the purpose of providing some financial advantage to the minor child even though he was apparently unwilling to voluntarily meet his support obligation in full. In our view, this financial benefit to Mrs. Dorr for the child's benefit, though not directly derived from Mr. Dorr's own income, in equity ought to be considered as a credit towards Mr. Dorr's recurring child support obligations accruing during the same period, much in the same manner that such indirect payments as social security payments to dependent children derived through the efforts of the obligee have been allowed as credit toward child support. See, e.g., Bradley v. Holmes, 561 So.2d 1034, 1035 (Miss.1990).
¶ 20. Therefore, while we decline to enforce the alleged extrajudicial agreement between the parties on the terms urged by Mr. Dorr, we nevertheless find it equitable, and so order, that Mr. Dorr receive a credit in the amount of $4,300 against those support obligations that accrued during the period of January 1988 through July 1994.
¶ 21. We note that, even if it were found as a matter of fact that Mr. Dorr's relinquishment of the tax dependency claim was a purely gratuitous and unilateral act, notions of unjust enrichment would compel the same result.

III.

Issue Two

Interest
¶ 22. A judgment, by law, accrues interest from the time it is entered. Miss.Code Ann. § 75-17-7 (Rev.2000); Cornelius v. Overstreet, 757 So.2d 332 (¶ 8) (Miss.Ct.App.2000). This rule has specifically been applied to such recurring periodic court-ordered obligations as child support and periodic alimony. Brand v. Brand, 482 So.2d 236, 237-38 (Miss.1986); Rubisoff v. Rubisoff, 242 Miss. 225, 235, 133 So.2d 534, 537 (1961). As to child support in particular, each monthly obligation that remains unpaid past its due date takes on the nature of a judgment that may not, in the ordinary course, be modified by the court thereafter. Included in this notion of finality is the proposition that each such unpaid installment begins to accrue interest at the legal rate, not from the time it may subsequently be formally reduced to judgment by a contempt or other appropriate enforcement proceeding, but from the time the obligation became due and owing and was not paid. Brand v. Brand, 482 So.2d at 237-38. The right to accrued interest on lawful judgments being statutory, it may not be abrogated by the chancellor on some perceived equitable ground any more than the chancellor could alter or amend the underlying obligation itself once it takes on the aspect of a final judgment. Tanner v. Roland, 598 So.2d 783, 786-87 (Miss.1992) (stating that a parent is liable for the interest which has accrued on each delinquent child support payment and that the Court cannot relieve the civil liability for such support payments that have already accrued).
¶ 23. The chancellor erred in denying interest on accrued but unpaid monthly child support obligations (as well as those other medically-related expenses reduced to judgment in this proceeding) from the time those obligations actually fell due.

IV.

Issue Three

Attorney's Fees
¶ 24. The chancellor denied attorney's fees to Mrs. Dorr, finding that she *1016 had not demonstrated her inability to pay such fees herself. Inability to pay is a necessary element of proof in an original domestic relations action such as divorce. Hankins v. Hankins, 729 So.2d 1283 (¶ 13) (Miss.1999). However, though this proceeding is founded on a matter arising under the domestic relations laws of our State, it is at its essence a proceeding to enforce a judgment, through the court's contempt powers or otherwise, that is indistinguishable from a proceeding to enforce a judgment relating to some other area of the law. For that reason, the Mississippi Supreme Court has recognized that a litigant forced to use the processes of the court to enforce an existing judicially-created obligation is entitled to reasonable attorney's fees since, otherwise, the litigant's recovery of that obligation would be unfairly diminished by the cost of enforcing compliance. Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973). The Pearson case makes clear that this right to attorney's fees depends of the existence of the debt and the fact of non-payment and does not depend on whether or not the defaulting obligor's failure to pay was found to be wilfully contemptuous. Id.
¶ 25. Admittedly, Mrs. Dorr delayed an inordinately long period of time in seeking to enforce Mr. Dorr's support obligations. However, that fact does nothing to diminish the existence of the obligation and, so long as it remained owing and unpaid, Mrs. Dorr had the legal right to enforce performance unless specifically barred by the applicable statute of limitations or other legally recognized bar. Under the ruling in Pearson, we see no reason why Mrs. Dorr should not be entitled to the reasonable costs, in terms of attorney's fees and related suit costs, of enforcing Mr. Dorr's existing legal obligations, which would necessarily include both the costs of the proceeding before the chancellor, the appeal before this Court, and any required additional proceedings on remand.

V.

Issue Four

Evidence of Partial Payment
¶ 26. The chancellor gave Mr. Dorr credit for partial payments on his child support obligation based upon entries of alleged payments made in Mr. Dorr's personal checkbook register. The corresponding personal checks themselves, representing the payments alleged to have been recorded in the register, were not produced by Mr. Dorr. He explained their unavailability by saying that he had long since destroyed the monthly bank statements for the affected periods of time, thinking they were no longer needed. Mrs. Dorr urges this Court to find error in the chancellor's ruling on this score on two fronts. First, she says the self-serving entries in the check register are not the best evidence of payment, rather, the cancelled checks themselves or, at the very least, photocopies of those checks constitute the best evidence of payment. Secondly, she alleges that the chancellor, on more than one occasion, awarded Mr. Dorr double credit for a single payment. This second assertion is based on the proposition that Mrs. Dorr had, in her case in chief, conceded certain payments by Mr. Dorr as evidenced by copies of checks that she had retained in her records and introduced into evidence, and that the credits allowed to Mr. Dorr based on his check register were in some instances the same payments already acknowledged by Mrs. Dorr as having been received. It should be noted that Mrs. Dorr specifically denied having received any payments by check from Mr. Dorr other than those evidenced *1017 by her own records as reflected in the check copies now in the record.
¶ 27. The law is clear that, in a proceeding to enforce past due child support, the claimant makes a prima facie case by proving the obligation and affirmatively denying having received the payment. Duncan v. Duncan, 417 So.2d 908, 909 (Miss.1982). At that point, the burden shifts to the respondent to show proof of payment by a preponderance of the evidence. In re Estate of Hollaway, 631 So.2d 127, 132 (Miss.1993) (stating that the burden of proof in a case of civil contempt is by a preponderance of the evidence).
¶ 28. The rules of evidence of this State declare that in order "[t]o prove the content of a writing ..., the original writing... is required, except as otherwise provided by law." M.R.E. 1002. Rule 1003 permits the use of a duplicate in certain circumstances. Rule 1004 permits other evidence of the contents of a writing only if all originals have been lost or destroyed or no original can be obtained by any available judicial process or procedure. It is uncontroverted that actual copies of Mr. Dorr's cancelled checks were available from his bank; however, Mr. Dorr testified that he made no effort to obtain such copies to demonstrate that the payments were actually made because of his understanding that the cost of obtaining such copies would be prohibitive. He offered no evidence to that effect other than his own assertion and he gave no clarification of what he considered to be a "prohibitive" cost.
¶ 29. We find Mr. Dorr's testimony, unsupported by any indication as to the actual difficulty involved in obtaining copies of the checks, as insufficient to overcome his obligation under the rules of evidence to produce the relevant documents themselves, or true copies thereof. [In this context, we understand the term "original" in Rule 1004, insofar as it pertains to alleged canceled checks, to include duplicates of such checks as routinely maintained by banks (See M.R.E. 1001(3)), so that, before secondary proof of the issuance of specific checkssuch as the check register offered in this casecould be received, the unavailability not only of Mr. Dorr's personal bank statements but also the unavailability of bank-maintained duplicates would have to be demonstrated.] It may have been unreasonably expensive to obtain such records, but then again, it may have been an entirely reasonable cost. Mr. Dorr, by his failure to even inquire as to such matters, has left us with nothing but speculation or conjecture to weigh his proposition. That is not a sufficient basis to avoid the requirements of this State's "best evidence" rules as incorporated in Mississippi Rules of Evidence that limit the proof available to support Mr. Dorr's claims of payment not acknowledged by Mrs. Dorr.
¶ 30. We further observe that, had Mr. Dorr been sure in his belief that those payments were, in actuality, made, and were his concerns about the prohibitive costs of retrieving the necessary proof from his bank truly a factor in his reluctance to obtain the necessary records, it was within his power to seek, through a request for admissions filed under Mississippi Rule of Civil Procedure 36, an admission from his former wife that such payments were made. Were she to deny receiving those payments, then Mr. Dorr could have obtained the necessary records and sought to have "the reasonable expenses incurred in making that proof" assessed against Mrs. Dorr under Rule 37(c). M.R.E. 37(c).
¶ 31. Therefore, we conclude that the chancellor erred in accepting Mr. Dorr's check register as proof of payment of any installments of child support not conceded *1018 by Mrs. Dorr. This renders moot Mrs. Dorr's alternate contention that certain credits allowed by the chancellor based on Mr. Dorr's check register were, in fact, duplicative of credits already conceded by her in her case in chief.
¶ 32. The question then becomes whether to reverse and render as to these credits since the register was the only evidence presented or whether we must reverse and remand for further inquiry as to Mr. Dorr's claimed entitlement to credit. In Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134 (1925), the Mississippi Supreme Court said the following:
The record simply presents a case wherein a fact necessary to support the judgment rendered was proven or made to appear by incompetent evidence, and in such a case the Supreme Court on appeal thereto should not decide the case as if no evidence of the fact had been introduced, but should remand the case for a new trial so that the fact may be made to appear by competent evidence. This, in so far as we are aware, is the universal rule....
Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134, 139 (1925). Under authority of this case, we find it appropriate to reverse and remand for further proceedings limited to the proper credit allowed Mr. Dorr for the partial payments proven at the first hearing solely through the device of his personal check register.
¶ 33. Because the matter must be considered anew on remand, we need not reach the question of whether the chancellor did, as Mrs. Dorr claims, allow Mr. Dorr double credit for certain of his claimed payments. We are satisfied that the improvement in the quality of proof of Mr. Dorr's alleged payments, if such proof is available, will make a determination of any claimed double credits substantially easier to thrash out. If, on the other hand, such proof is not available, then the issue of double credit will necessarily become moot.
¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS REVERSED AND JUDGMENT IS RENDERED FOR THE APPELLANT IN THE AMOUNT OF $17,775 TOGETHER WITH INTEREST AT THE LEGAL RATE COMPUTED FROM THE DUE DATE OF EACH OF THE MONTHLY INSTALLMENTS OF $225 THAT, IN THE AGGREGATE COMPRISE THIS AMOUNT, LESS A ONE TIME CREDIT OF $4,300; WITH THE EXCEPTION THAT THE MATTER IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS AS TO THOSE CREDITS ALLOWED TO THE APPELLEE FOR PAYMENTS ALLEGEDLY EVIDENCED SOLELY BY ENTRIES IN THE APPELLEE'S PERSONAL CHECK REGISTER. THE CAUSE IS ALSO REMANDED FOR A DETERMINATION OF APPROPRIATE ATTORNEY'S FEES FOR PURSUING THE COLLECTION OF THE SUMS DUE. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEE.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.
IRVING, J., concurs in part and dissents in part with separate written opinion.
IRVING, J., concurring in part, dissenting in part:
¶ 35. I agree with parts I, II, III, and V of the majority opinion. However, on the facts of this case, I cannot agree that the award of attorney's fees was appropriate; therefore, I respectfully dissent from that *1019 portion of the majority's opinion reversing the chancellor's denial of attorney's fees to Mrs. Dorr.
¶ 36. The chancellor denied attorney's fees to Mrs. Dorr on the basis that she had not demonstrated her inability to pay such fees herself. I agree with the majority that this is not an original domestic relations action and that because it is not, the grant of attorney's fees should not be based on a showing of inability to pay. However, I do not read the holding in Pearson v. Hatcher, 279 So.2d 654 (Miss. 1973), as broadly as does the majority.
¶ 37. The majority says, "The Pearson case makes clear that this right to attorney's fees depends on the existence of the debt and the fact of non-payment and does not depend on whether or not the defaulting obligor's failure to pay was found to be wilfully contemptuous." Majority opinion at page 11. Rather than seeing clarity in the language employed by the Pearson court, I see ambiguity. I agree that there is some language in Pearson that is perhaps susceptible to the majority's interpretation, but I do not think Pearson stands for the principle of law enunciated by the majority: the existence of a valid child support order mandates an award of attorney's fees even if there has not been a finding of wilful failure to pay on the part of the obligor. Stretched to its logical limits, the principle of law announced by the majority would allow an award of attorney's fees upon the establishment of a prima facie case of delinquency in payment, no matter the justification for the delinquency or whether the prima facie case of delinquency has been successfully rebutted.
¶ 38. In Pearson, Theda Fay Hatcher Pearson filed a petition against her former husband for citation for contempt for failure to pay child support and for modification of the existing child support order. The trial court found the former husband in default but refused to find him in contempt because Theda "failed to prove the exact amount alleged to be in arrears." Pearson, 279 So.2d at 655-56. The trial court also denied Theda's request for attorney's fees, and failed to adjudicate "the amount of support money in default so that the [husband's] present ability to pay the sum might be adjudged." Id. at 655. The Pearson court said: "We do not reach the question of whether the trial court erred in declining to find the appellee in contempt. We think this should be determined on his present ability to pay when the amount in default is determined on remand." Id at 655-56.
¶ 39. It is what the Pearson court said in the next two passages, quoted below, that I find ambiguous:
Finally, we conclude that the appellant was entitled to an award of attorney's fees.... If on rehearing the appellee is found to be in contempt of court for failure to abide by the terms of the former decree, we think it necessarily follows that the attorney's fee should be assessed against the person violating the decree and surely not against the party seeking to uphold it.

* * * *
[W]hen the responsibility of support by the father is reduced to judgment by order of the court, it is his duty to comply therewith. In the event of default of payments though it is not accompanied by a finding of contempt due to present inability to pay or for other reasons, attorney's fees nevertheless are the responsibility of the father.

Pearson, 279 So.2d at 655-56. (emphasis added).
¶ 40. The court in Pearson certainly used broad and sweeping language, and in *1020 my judgment conflicting language, to make its point that on the facts of that case the defaulting obligor could not avoid paying attorney's fees simply because of the obligee's failure to prove the exact amount of the arrearage. However, I do not believe it was the intention of the Pearson court to equate "default" with "contempt." If that had been the intention of the court, it would not have been necessary to make the award of attorney's fees, on remand, contingent upon a finding of contempt, yet, in my opinion, that is exactly what the following language does:
If on rehearing the appellee is found to be in contempt of court for failure to abide by the terms of the former decree, we think it necessarily follows that the attorney's fee should be assessed against the person violating the decree and surely not against the person seeking to uphold it.
¶ 41. I believe the holding in Pearson is fact specific and stands for nothing more than the principle of law that an obligee of a child support order, who has proven default on the part of the obligor, should not be denied attorney's fees simply because the obligee has failed to prove the exact amount of the default. This is the only logical conclusion to be reached based on the peculiar facts in Pearson.
¶ 42. I believe the chancellor used the wrong legal standard in determining whether attorney's fees should be awarded. However, since he made no determination of whether Mr. Dorr's failure to pay was wilful and contemptuous, I would reverse and remand this case for such a determination with instructions to award attorney's fees only in the event of a finding of contempt. For the reasons presented, I respectfully dissent.