MURDOCK, Judge.
C.K. appeals from a judgment of the Mobile Juvenile Court modifying his child-support obligation; J.M.S. cross-appeals from that order. Because we find that the juvenile court applied the incorrect law in resolving some of the issues that the parties presented to it, we affirm in part, reverse in part, and remand.
On January 5, 1986, P.T.S. was born to J.M.S. On May 6, 1987, the Chancery Court for the First Judicial District of Hinds County, Mississippi, entered a judgment establishing that C.K. is P.T.S.’s father (“the 1987 judgment”). The 1987 judgment incorporated an agreement between the parties requiring, among other things, that C.K.: (1) pay $250 per month for P.T.S.’s support; (2) maintain health insurance for P.T.S.; and (3) pay one-half of P.T.S.’s uncovered medical expenses. Consistent with Mississippi law, those obligations would continue until P.T.S. reached the age of 21 years, was married, or was otherwise emancipated.
Subsequent to the entry of the 1987 judgment, J.M.S. and P.T.S. moved to Louisiana, where they presently reside. At the time of the 1987 judgment, C.K. was a resident of Alabama, where he continues to reside.
In 1999, J.M.S. indicated to C.K. that the amount of child support he had been ordered to pay was insufficient to support P.T.S. After the parties exchanged tax returns and further correspondence, C.K. wrote to J.M.S. and indicated that he could pay her $750 per month as child support. C.K. began making payments in that amount in June 1999.
In January 2002, C.K. reduced his monthly child-support payments to $600 on the asserted basis that he was experiencing financial problems. He further reduced his child-support payments to $500 per month in June 2003.
P.T.S. applied to and was accepted by Tulane University to begin as a freshman in the fall of 2004. The annual cost of tuition, room, and board at Tulane was $40,735. After ' deducting from that amount the scholarships and other financial assistance that P.T.S. received, there remained an uncovered annual cost of attendance at Tulane of approximately $17,100.
On December 8, 2003, J.M.S. filed a “Motion to Modify and for Rule Nisi” against C.K. in the Mobile Juvenile Court in which she sought to have the 1987 judgment modified by increasing the amount of C.K.’s child-support obligation. She also sought to have the court order C.K. to pay $178.59 in medical costs that he allegedly owed pursuant to the terms of the 1987 judgment.
On April 6, 2004, J.M.S. filed an “Amended Motion for Modification and for Rule Nisi,” in which she alleged that she and C.K. had entered into an agreement in 1999 to increase his child-support obligation to $750 per month. She claimed that C.K. was in arrears in his child-support payments in the amount of $7,550, and she sought an increase of C.K.’s child-support obligation on the basis that C.K.’s $750 monthly payment was insufficient to support P.T.S. She also alleged that C.K. had failed to pay certain medical bills and to forward insurer reimbursements to her as required under the 1987 judgment.
On April 25, 2004, the Mobile Juvenile Court entered an order registering the 1987 judgment in that court. Thereafter, in June 2004, C.K. filed an amended answer and a counterclaim in which he denied the pertinent allegations of J.M.S.’s motion to modify and sought a modifica *727 tion of the 1987 judgment whereby his child-support obligation would end when P.T.S. reached 19 years of age, as provided by Alabama law, rather than when he reached 21 years of age as provided in the 1987 judgment and by Mississippi law.
The juvenile court held a hearing on the matter on August 12, 2004, at which J.M.S. and C.K. testified. On October 18, 2004, the court entered a judgment disposing of the parties’ claims. In pertinent part, the court’s judgment provided:
“The Court makes the following conclusions of law:
“1. The Court determines that Mississippi law controls the duration and determination of the amount of child support, and therefore the Court concludes that child support shall be payable by the father to the mother until the child reaches the age of twenty-one (21), with no further post-minority support.
“2. The Court concludes that no pri- or modification of the terms of the previous order was affected by law, contract, or other conduct of the parties such that the current existing order remains $250.00 per month payable by the Defendant to the Plaintiff.
“3. The Court rejects the contention of the Plaintiff that a contract was established by the communications and letters of the parties and the conduct of the Defendant, in paying monies over and above $250.00 per month. The Court further finds that the Defendant is due no credit for any of said overpayments previously made.
“The Court further concludes the following facts:
“1. The Court finds the child’s anticipated college expense beginning with the 2004-2005 academic year to be $40,785.00 to attend Tulane University.
“2. The Court finds that the child has received financial assistance in the amount of $23,635.00, yearly.
“3. The Court finds that pursuant to the terms of the previous order, from the Chancery Court of Mississippi, the Defendant is obligated to provide medical insurance for the benefit of the minor child, and pay a portion of any uncovered charges. The Court further finds that the Defendant maintains medical insurance for the benefit of the child.
[[Image here]]
“5. The Court finds an unmet financial need for the child’s college expenses of approximately $17,100.00 per year, and finds that the parties are similarly situated, economically, and able to share said expense equally....
“It is therefore ORDERED, ADJUDGED, and DECREED by the court that the Petition to Modify Child Support filed by the Plaintiff is hereby GRANTED, and the Court does ORDER that child support payable to the Plaintiff by the Defendant is hereby set at $712.50 per month beginning August of 2004. The Court ORDERS the Defendant to begin making $712.50 per month payments in the month of November 2004, and the Court awards a judgment to the Plaintiff in the amount of $1,387.50, against the Defendant, said judgment to be paid within ninety (90) days of this date.
“The Court awards a judgment for unpaid medical expenses, due pursuant to the previous order, in the amount of $319.53 in favor of the Plaintiff against the Defendant. Said sum is ORDERED to be paid within one hundred and twenty (120) days.
[[Image here]]
“The Court does ORDER that child support will terminate upon the attain *728 ment of age twenty-one (21), by the child, as will the duty to provide medical insurance.”
The court amended its judgment on October 28, 2004, to include a provision requiring that child-support payments be made through the court.
On October 29, 2004, C.K. filed a motion to alter or amend the judgment in which he asserted, among other things, that the court’s decision to apply Mississippi law in determining the amount and duration of child support was erroneous. The court denied that motion on November 18, 2004.
C.K. filed his notice of appeal to this court on November 29, 2004. J.M.S. filed her notice of cross-appeal on December 13, 2004.
C.K. contends that the juvenile court erred when it concluded that Mississippi law was determinative of the duration and amount of child support he was obligated to provide for P.T.S. Citing Ala.Code 1975, § 30-3A-303(2), he points out that Alabama’s version of the Uniform Interstate Family Support Act, Ala.Code 1975, §§ 30-3A-101 to -906 (“UIFSA”),[1] provides that courts of this state are required to apply Alabama law when determining “the duty of support and the amount payable ....” He further points out that, when a foreign child-support order is registered in this state, the modification of that order “is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a court of this state-” Ala.Code 1975, § 30-3A-611(b). C.K. concludes that, because the juvenile court should have applied Alabama law in determining the duration and amount of child support that would be due from him, the juvenile court erred when it refused to hold that C.K.’s child-support obligation would terminate when P.T.S. reached 19 years of age.
J.M.S. responds that the juvenile court correctly determined that it should apply Mississippi law when determining whether and to what extent it should modify the 1987 judgment. As to whether Mississippi law was applicable to the modification of the duration of child support, J.M.S. points out that Ala.Code 1975, § 30-3A-611(c), prohibits a court of this state that has registered a foreign support order from modifying any aspect of that order that is unmodifiable under the law of the state in which the court that issued the order is located. J.M.S. also argues that the juvenile court was correct to apply Mississippi law with regard to the amount of support because Alabama does not recognize child support after age 19, and, because P.T.S. is entitled to support under Mississippi law until he turns 21, “there is no law to apply [in determining the amount of child support] other than that of Mississippi.”
Alabama Code 1975, § 30-3A-611(b) and (c), read in pertinent part:
“(b) Modification of a registered child-support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a court of this state and the order may be enforced and satisfied in the same manner.
“(c) A court of this state may not modify any aspect of a child-support order that may not be modified under the law of the issuing state.”
With regard to those subsections, the Official Comment states:
“Subsection (b) states that if the forum has modification jurisdiction be *729 cause the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders. However, Subsection (c) prevents the modification of any final, nonmodifiable aspect of the original order. For example, if child support was ordered through age 21 in accordance with the law of the issuing state and the law of the forum state ends the support obligation at 18, modification by the forum tribunal may not affect the duration of the support order to age 21.”
(Emphasis added.)
The appellate courts of this state have not addressed the issue of the modification of the duration of a foreign child-support order under UIFSA. However, numerous courts in other jurisdictions have faced this issue and have held, consistent with the above-quoted Official Comment, that if the law of the state in which a child-support order was originally issued provides that child support shall continue until the child is a particular age, a court of a different state that has registered the order for the purpose of modifying it cannot alter the duration of child support provided in the original child-support order. See, e.g., In re Marriage of Doetzl, 31 Kan.App.2d 331, 336-37, 65 P.3d 539, 543 (2003); Kerr v. Kerr, 100 S.W.3d 912, 914-15 (Mo.Ct.App.2003); Holbrook v. Cummings, 132 Md.App. 60, 67-69, 750 A.2d 724, 728-29 (2000); In re Marriage of Cooney, 150 Or.App. 323, 327-28, 946 P.2d 305, 306-07 (1997).
In support of his view that Alabama law should control the duration of his child-support obligation, C.K. cites this court’s decisions in Finney v. Eagly, 568 So.2d 816 (Ala.Civ.App.1990), and State ex rel. Taylor v. Nelson, 535 So.2d 178 (Ala.Civ. App.1988). In Taylor, this court was confronted with a petitioner’s attempt to modify a divorce judgment rendered by an Alabama court, not a foreign court. Consequently, this court’s holding that Alabama law controlled the duration of the child-support obligation does not provide support for C.K’s position in the present case. Finney likewise fails to provide support for C.K.’s position because that decision was rendered before Alabama’s adoption of UIFSA and, particularly, its pronouncement, buttressed by the Official Comment quoted earlier in this opinion, that the courts of this state are without jurisdiction to modify those portions of a foreign support order that are not modifiable under the law of the state in which the order was issued.
Based on the foregoing, this court must determine whether the duration of C.K.’s child-support obligation contained in the 1987 judgment is subject to modification under Mississippi law. Section 93-11-65(8), Miss.Code Ann., provides, in pertinent part:
“The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
“(a) Attains the age of twenty-one (21) years, or
“(b) Marries, or
“(c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
“(d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.”
*730 Thus, under Mississippi law, a child is entitled to support until he or she is emancipated, as defined by the above-quoted statute. See Caldwell v. Caldwell, 823 So.2d 1216, 1220 (Miss.Ct.App.2002) (quoting Crow v. Crow, 622 So.2d 1226, 1229 (Miss.1993)). See also Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss.1991) (holding that parents cannot, by agreement, terminate child support for a child before the child’s emancipation and that any such agreement, even if adopted in a divorce judgment, would be void and unenforceable).
Based on the facts of this case, P.T.S. has not been emancipated. Consequently, under Mississippi law and the 1987 judgment, C.K. must continue to provide child support for P.T.S. until P.T.S. reaches the age of 21 years or is otherwise emancipated. This period is not subject to modification under Mississippi law, and, therefore, the courts of this state cannot modify it. See Ala.Code 1975, § 30-3A-611(c). Therefore, the juvenile court did not err when it held that Mississippi law governed the extent to which the duration of C.K’s child-support obligation was amenable to modification, and we affirm the juvenile court’s judgment in that regard.[2]
Although the juvenile court correctly held that Mississippi law defines the duration of C.K.’s child-support obligation, it was incorrect when it determined that Mississippi law controlled its modification of the amount of child support awarded under the 1987 judgment. Unlike the duration for which child support must be awarded under Mississippi law, the amount of child support awarded by a court pursuant to Mississippi law is subject to modification. See Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.Ct.App.1991). Thus, Ala.Code 1975, § 30-3A-611(c), does not apply, and, pursuant to Ala.Code 1975, § 30-3A-611(b), the juvenile court should have applied the same “requirements, procedures, and defenses” applicable to modifications of child-support orders issued by courts of this state. In other words, the juvenile court should have applied Alabama law with regard to a modification of the amount of C.K.’s child-support obligation. See Wall v. Borosky, 850 So.2d 351, 357 (Ala.Civ.App.2002). See also Ala. Code 1975, § 30-3A-303(b) (indicating that courts of this state “shall determine the duty of support and the amount payable in accordance with the law and support guidelines of this state”).[3]
J.M.S. argues that the juvenile court correctly applied Mississippi law in determining the amount of support due because Alabama law does not recognize a duty of support after a child reaches the age of majority, which, in Alabama, is 19 years of age. This argument is without merit because, as discussed above, Alabama law does recognize the right of a child to support beyond Alabama’s age of majority when, in a case such as the present case, a *731 parent seeks in an Alabama court a modification under UIFSA of a child-support order that was issued by a court in.a state requiring child support to continue until a point beyond Alabama’s age of majority. See Ala.Code 1975, § 30-3A-611(c). There is no basis for the application of any law other than Alabama’s, however, in determining the amount of child support due, given that Rule 32 of our Rules of Judicial Administration and the guidelines contained therein were “established for use in any action to establish or modify child support, whether temporary or permanent.” Rule 32(A), Ala. R. Jud. Admin, (emphasis added).
Because the juvenile court failed to apply the same “requirements, procedures, and defenses” applicable to modifications of child-support orders issued by courts of this state (Ala.Code 1975, § 30-3A-611(b)), and because the juvenile court failed to “determine the duty of support and the amount payable in accordance with the law and support guidelines of this state” (Ala. Code 1975, § 30-3A-303(b)), we reverse the juvenile court’s determination of the amount of C.K’s child-support obligation and remand the cause to the court for it to apply Alabama law.[4]
J.M.S. contends in her cross-appeal that the juvenile court erred when it excluded evidence of P.T.S.’s size. In her brief to this court, she notes that P.T.S. is 6'3", weighs approximately 275 pounds, and wears a size 14EEEE shoe. J.M.S. argues that P.T.S.’s size “compounds the expense of clothing him year round and feeding him during the summer months,” and that evidence of his size was relevant to the cost to support him.
The following colloquy occurred at trial regarding J.M.S.’s attempt to introduce evidence of P.T.S.’s size:
“[COUNSEL FOR J.M.S.:] At this time was the cost of raising [P.T.S.] due to his age, his education and his activities, increasing?
“[J.M.S.:] Absolutely. [P.T.S.] had turned 16 and was driving age. I had paid for him to go to driving school. And I had passed down my '92 Honda Accord to [P.T.S.] which needed maintenance and gas and insurance.
“Q. Is that what he’s driving now?
“A. That’s correct.
“Q. A little Honda Accord?
“A. That’s correct.
“Q.. Tell the Court how big this boy is.
“[COUNSEL FOR C.K.]: I’m going to object, Your Honor.
“THE COURT: Sustained.
“[COUNSEL FOR C.K.]: It’s irrelevant.
“THE COURT: It doesn’t matter to me how big he is or how small the car is. Let’s go.
*732 “[COUNSEL FOR J.M.S.]: Judge, it goes to the question of him driving a 1992 car. When you hear how large he is, you’ll see that he needs another car and under Mississippi law that goes to the question of maintenance and support. I can hook it up. I’m not doing it for anything other than maintenance and support.
“THE COURT: I don’t think his size is going to get him a new car. Now, if you want to put something on about the car’s undependability or its inability to provide the needs, I’ll hear that.”
Following this colloquy, J.M.S.’s attorney began questioning her about the condition of the 1992 car.
J.M.S. did not preserve for appeal the question whether P.T.S.’s size was admissible to demonstrate the abnormally high cost of supporting him due to the cost of feeding and clothing a child of P.T.S.’s size because, as the above-quoted colloquy demonstrates, she did not offer it for that purpose. Instead, she offered evidence of his size only for the limited basis of arguing that he needs a new car. We cannot consider whether the exclusion of a party’s testimony was error on a ground for admission that he or she did not assert at trial. See Zielke v. AmSouth Bank, N.A., 703 So.2d 354, 359 (Ala.Civ.App.1996).
J.M.S. also contends that the juvenile court erred when it refused to permit her to testify about her conversion of her 401k account into an individual retirement account to fund certain of P.T.S.’s expenses. The basis for J.M.S.’s contention is that the fact that she was required to deplete her assets to support P.T.S., while C.K. was not, is relevant to the determination of a fair division of the parties’ responsibilities with regard to P.T.S.’s support. J.M.S. cites Miss.Code Ann., § 43-19-103(1), in support of her argument. While Mississippi law may provide that J.M.S.’s depletion of her 401k account is relevant, Mississippi law, as noted above, does not apply to the determination of the parties’ support obligations in this modification proceeding. On remand, the juvenile court will be required to apply Alabama law and thereby determine the proper amount of support due. Thus, J.M.S.’s argument, based as it is on Mississippi law, is without merit.
J.M.S. next contends that the juvenile court erred when it refused to enforce the alleged 1999 contract between C.K. and J.M.S. to increase C.K.’s child-support obligation to $750 per month. She argues that, throughout the trial, C.K. and his counsel acknowledged this agreement. Therefore, she argues, “the Juvenile Court’s determination [that there was no contract between the parties to increase C.K’s monthly child-support payments] is against the preponderance of the evidence and thus, constitutes an abuse of discretion, which should be reversed.” J.M.S. argued to the juvenile court, and the juvenile court agreed, that Mississippi law determines whether the parties’ actions and alleged agreement in 1999, which occurred well before the trial court entered an order registering the 1987 judgment, effected a change of C.K.’s child-support obligation, increasing it from $250 per month to $750 per month.
Even if J.M.S. is correct that the parties entered into a contract to increase the amount of C.K.’s child-support payments, the juvenile court was correct in refusing to enforce that contract. Under Mississippi law, agreements to alter child support must be submitted to a court for approval before they become enforceable. Dorr v. Dorr, 797 So.2d 1008 (Miss.Ct.App.2001) (citing Calton v. Calton, 485 So.2d 309, 310-11 (Miss.1986)). J.M.S. concedes that the alleged 1999 agreement was not submitted to a court for approval.
*733 J.M.S. argues that “[t]he Mississippi Supreme Court has held that as a matter of public policy, the parents of a child can and are free to enter into an [sic] post-decree agreement rather than file formal proceedings in court, and has held that such agreements are enforceable as equity dictates.” The cases from which she quotes in support of this argument, however, Varner v. Varner, 588 So.2d 428 (Miss.1991), and Dorr v. Dorr, supra, are not nearly as broad in their holdings as would be necessary to support the conclusion she draws.
In Varner, the Mississippi Supreme Court enforced a postdivorce agreement whereby the noncustodial parent took custody of one of the children born of the marriage in exchange for which his child-support payments were reduced, despite the parents’ failure to seek judicial approval of the agreement. Varner, 588 So.2d at 435. The court wrote:
“The law remains firm that court-ordered child support payments vest in the child as they accrue and may not thereafter by modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made. This gets us to an important consideration, for, although [the father] and [the mother] had no authority to pretermit [the father’s] obligation via [their agreement relating to custody and the reduction in child support], it appears beyond peradventure that [the father] has, in fact, long since paid what he has owed to support [the child]; he just did not pay it to [the mother].”
588 So.2d at 434. Citing Alexander v. Alexander, 494 So.2d 365 (Miss.1986), the court noted that a “father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where, to hold otherwise would unjustly enrich the mother.” 588 So.2d at 435. Thus, the court affirmed the trial court’s holding that the father had discharged his obligation to support the child from the point at which he took custody of her until her emancipation. Id.
In Dorr, the Mississippi Court of Appeals noted that “in certain circumstances, [extrajudicial agreements modifying child-support obligations] have been given effect when to do so does not adversely affect the true beneficiary of the obligation, ie., the child, and to do otherwise might produce an inequitable result as between the litigants themselves.” Dorr, 797 So.2d at 1013. However, the court did not find the exception to the general rule of the nonen-forcement of extrajudicial modification agreements to be applicable in that case because enforcement of the agreement, which would have relieved the father of a substantial number of child-support payments, would have resulted in inequity to the child for whom the support was intended. Id. at 1014.
J.M.S. cites several reasons that equity should intervene to save her alleged post-judgment contract with C.K. from the general rule that such agreements cannot modify support obligations absent court approval: (1) the 1999 agreement was the only adjustment made by the parties in over 13 years; (2) the existence of the agreement is undisputed; (3) it was C.K. who “begged” J.M.S. to accept $750 per month; (4) C.K.’s reason for failing to continue paying $750 per month after two and a half years of having done so was false; and (5) J.M.S. was forced to convert her 401k account into an individual retirement account to fund certain of P.T.S.’s expenses, evidence of which the court refused to hear.
*734 No case cited by J.M.S. recognizes any of those reasons as a basis for deviating from the general rule of the nonenforcement of postjudgment agreements to modify child support. The fact that she waited 13 years to complain about the amount of child support C.K. was paying does not justify the intervention of equity, nor does the fact that C.K. may have been less than forthcoming as to the reasons he discontinued paying $750 per month. Furthermore, we do not understand the equity exception to be so broad as to encompass every situation in which an alleged agreement was undisputed.
The fact remains that J.M.S. was free at any time, including after C.K. discontinued making the $750 monthly payments, to seek a judicial modification of the child-support amount originally ordered by the Mississippi court. Furthermore, J.M.S. has failed to identify facts demonstrating the primary equitable circumstance, unjust enrichment, recognized by the cases that she cites as a basis for enforcing a post-judgment agreement between the parties to modify child support. Given her ability to have sought a modification of C.K’s child-support obligation at any time, she has failed to demonstrate that C.K. has been unjustly enriched, like the mother in Varner, by the juvenile court’s refusal to enforce the alleged 1999 agreement.
We affirm that portion of the juvenile court’s judgment finding that the actions of the parties with regard to the alleged agreement did not work a modification of C.K.’s child-support obligation.
J.M.S. argues alternatively that the juvenile court should have applied Louisiana law to the determination of whether the parties entered into a binding contract in 1999 that effected a modification to C.K’s support obligation. In order for us to find that the juvenile court should have applied Louisiana law and found the alleged contract to be enforceable thereunder, however, we would necessarily be required to find that the juvenile court erred when it applied Mississippi law in determining that the actions of the parties with regard to the alleged contract did not effect a modification of C.K’s child-support obligation. We cannot reverse the juvenile court’s judgment on that ground because J.M.S. herself argued to the juvenile court that Mississippi law should be applied in that context, her counsel going so far as to state in oral argument before the juvenile court that “there is no way [counsel for C.K.] can argue with a straight face that the determination of arrearages that we want reduced to a judgment is not governed by the law of Mississippi. There’s no place in the Act for room to interpret that.” Indeed, on appeal, J.M.S. admits that her position before the juvenile court was that Mississippi law applied to the determination of whether the parties’ actions relative to the alleged 1999 agreement modified C.K’s child-support obligation, writing in her appellate brief: “At first blush, it would appear, and J.M.S. argued below, that Mississippi law controls whether the post-decree agreement between the parties is enforceable and whether the arrearages, $8,700.00, are owed.” (Emphasis added.) Having led the juvenile court to apply Mississippi law to the resolution of the contract issue, J.M.S. cannot argue to this court that the juvenile court should have applied the law of a state other than Mississippi. See Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala.2003) (“The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. ‘A party may not predicate an argument for reversal on “invited error,” that is, “error into which he has led or lulled the trial court.” ’ Atkins v. Lee, 603 So.2d 937, 945 *735 (Ala.1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)). ‘That doctrine [of invited error] provides that a party may not complain of error into which he has led the court.’ Ex parte King, 643 So.2d 1364, 1366 (Ala.1993). ‘A party cannot win a reversal on an error that party has invited the trial court to commit.’ Neal v. Neal, 856 So.2d 766, 784 (Ala.2002).”).
J.M.S. next contends that the juvenile court erred when it refused to award retroactive support to the date that C.K. discontinued making monthly child-support payments of $750 or, at least, to the date that she filed her motion for a modification. In support of this argument, she cites Mississippi statutory law and case-law, although she does not appear to take a position on which state’s laws apply to the resolution of this issue.
As we previously discussed in this opinion, Alabama law, rather than Mississippi law, controls the determination of whether and to what extent the amount of child-support payments owed by C.K. are due to be modified. Thus, on remand, as previously noted, the juvenile court will be directed to determine, in accordance with Alabama law, whether J.M.S. is due an increase in the amount of child-support payments she is receiving from C.K. Only after the juvenile court applies Alabama law to this question will it be able to consider whether and to what extent, under xMabama law, J.M.S. is entitled to an award of retroactive support.[5] Because the juvenile court has not yet settled these issues under the appropriate law, we will not address J.M.S.’s argument regarding retroactive support.
J.M.S. next contends that the juvenile court erred because, according to her, it “seems to have omitted the requirement that C.K. carry one-half the uncovered [medical] expenses as well as the requirement that C.K. provide disposition notices and payments within ten days of receipt along with his share of uncovered costs,” although, according to her, the court “ordered C.K. to continue to carry the health insurance” for P.T.S.
Our reading of the juvenile court’s judgment does not bear out J.M.S.’s contention. Outside of noting, in its statement of the relevant facts, that the 1987 judgment required C.K. to carry insurance for P.T.S., and that he was in fact carrying insurance on P.T.S., the juvenile court did not address C.K’s obligation with regard to medical insurance or the payment of uncovered medical costs. Because the juvenile court was silent with regard to any modification of those obligations, we find that those obligations, as set out by the 1987 judgment, are still in effect and binding on C.K.
Finally, J.M.S. contends that the juvenile court erred when it failed to apply Alabama law and award postminority support to P.T.S. for his college expenses from the point at which he turns 21 years old. As noted above, the juvenile court correctly determined that Mississippi law governs the issue and the duration of P.T.S.’s child support. Mississippi law does not provide for the continuation of that support beyond a child’s emancipation, whether for college or otherwise, in *736 the absence of a contractual obligation to the contrary. See Meek v. Warren, 726 So.2d 1292, 1293 (Miss.Ct.App.1998). We therefore find no error in the absence from the juvenile court’s judgment of an award of postemancipation college expenses for P.T.S.’s benefit.
For the foregoing reasons, the juvenile court’s judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent herewith.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CROSS-APPEAL — AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.

. UIFSA became effective on January 1, 1998, replacing the Uniform Reciprocal Enforcement of Support Act, Ala.Code 1975, § 30-4-80 to -98. See State ex rel. K.M. v. R.S., 803 So.2d 575, 575 n. 1 (Ala.Civ.App.2001).

. Ironically, in order to have not modified the 1987 judgment, the juvenile court should have ordered that C.K.’s child-support obligation continue until P.T.S. "reach[esj the age of 21, marries, or is otherwise emancipated,” as did the 1987 judgment. Instead, the juvenile court's judgment abbreviates this provision by stating only that child support will continue until P.T.S.'s 21st birthday. On appeal, however, C.K. does not complain of this difference between the juvenile court's judgment and the 1987 judgment.

. See also, e.g., Batterman v. Bender, 809 N.E.2d 410, 413 (Ind.Ct.App.2004); In re Marriage of Crosby and Grooms, 116 Cal.App.4th 201, 209, 10 Cal.Rptr.3d 146, 151-52 (2004); Cook v. Cook, 143 Ohio App.3d 687, 690-91, 758 N.E.2d 1158, 1160 (2001); Alaska State Child Support Enforcement Division v. Bromley, 987 P.2d 183, 188-91 (Alaska 1999); and Groseth v. Groseth, 257 Neb. 525, 529-39, 600 N.W.2d 159, 164-69 (1999).

. Because we find that the amount of child support that C.K. owes should be determinéd in accordance with Rule 32, Ala. R. Jud. Admin., we do not address J.M.S.’s alternative argument that the application of Alabama law to this matter should result in an award of child support beyond that recognized by our Supreme Court in Bayliss v. Bayliss, 550 So.2d 986 (Ala.1989). Furthermore, we find J.M.S.'s contention that the juvenile court erred in its application of Mississippi law by limiting its award of child support against C.K. to one-half of P.T.S.'s college expenses to be without merit, because, as we have stated, the juvenile court should have applied Alabama law in ’determining the amount of C.K.'s child-support obligation. We do point out, however, that the expense of P.T.S.’s college education is one factor that could potentially lead'the juvenile court, on remand, to modify C.K.'s child-support obligation in a manner that deviates from the child-support guidelines, although we do not take a position on whether a deviation from the guidelines is appropriate. See Rule 32(A)(1)(c), Ala. R. Jud. Admin.

. In resolving the issue whether and to what extent J.M.S. is entitled to retroactive child support, the juvenile court is reminded that under Alabama law child-support payments that mature or become due before the filing of a petition to modify are not modifiable. Ex parte State ex rel. Lamon, 702 So.2d 449 (Ala.1997). A child-support obligation may be modified only as to installments that accrue after the filing of a petition to modify the child-support obligation. Rule 32(A)(3)(a), Ala. R. Jud. Admin.